**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| ROGER SAESEE, *Petitioner-Appellant*, v. MIKE MCDONALD, Warden, *Respondent-Appellee*. | No. 10-15895 D.C. No. 1:08-cv-01152-OWW-JMD OPINION |

Appeal from the United States District Court
for the Eastern District of California
Oliver W. Wanger, Senior District Judge, Presiding

Argued and Submitted
April 17, 2013—San Francisco, California

Filed August 5, 2013

Before: John T. Noonan, Diarmuid F. O'Scannlain,
and N. Randy Smith, Circuit Judges.

Opinion by Judge Noonan

## SUMMARY*

### Habeas Corpus

The panel affirmed the district court's denial of a 28 U.S.C. § 2254 habeas corpus petition alleging ineffective assistance when counsel allegedly promised in his opening statement that a witness would testify.

The panel held that the state court was not unreasonable in concluding that counsel did not make such a promise, explaining that it was rather an expression of hope that left the jury open to the possibility that the witness would not appear.

### COUNSEL

Arthur Henry Weed, Santa Barbara, California, for Petitioner-Appellant.

Lloyd George Carter and Lewis Albert Martinez, Deputy Attorneys General, Fresno, California, for Respondent-Appellee.

---

* This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## OPINION

NOONAN, Circuit Judge:

Roger Saesee appeals the denial of his petition for a writ of habeas corpus. We find that Saesee's counsel was not constitutionally ineffective because he did not promise the jury that a witness would testify. We affirm.

## FACTS

On November 15, 2004, Joe Fernandez was barbequing with his friend Fernando Cantu when a group of men, including Defendant Saesee, approached them. At least two of the men were members of the Oriental Troop (OT) Gang, a predominantly Asian gang.

One of the men asked Fernandez and Cantu if they were "fleas," a derogatory term used to insult members of the Mexican Gangster Boys (MGB). Angered, Fernandez responded that neither he nor Cantu was part of the MGB. At this point, Fernandez recognized Saesee and said, according to Cantu's testimony, "[Saesee] shot up my house a couple months ago. Let's go in the parking lot and handle it." Fernandez then took off his shirt, challenged the men to a fistfight, and yelled, "Fuck OTs, fuck Crips . . . What, you guys gonna shoot me?" Saesee and another man took out their guns and shot at Fernandez, who died from multiple gunshot wounds.

At issue in this case is the opening statement of James Michael Kordell, Saesee's defense counsel. In his opening statement Kordell informed the jury of the defense theory: Saesee could not have been present at the scene of the

shooting because he was at the house of Breanna Saecho, his then-13-year-old girlfriend. Kordell then stated that Breanna had already confirmed Saesee's story that Breanna's grandfather could also confirm Saesee's alibi:

> [W]e found out that there's an old man, Long Shio Saechao. [He] was in that house the night [Saesee] came over. . . , He was mad as hell that the girl [Breanna] told the police. He was mad as hell that she was subpoenaed to be here. I'm counting on him to tell the truth and corroborate what the girl said.

Shortly after, Kordell's opening statement concluded.

At trial, Breanna identified Saesee. She testified that he had been her boyfriend. She also testified that on November 15, 2004, the day of the shooting, she had spent the whole day and night with him.

At the close of Breanna's testimony, Kordell stated, "If we could check outside for one witness in the hope he might be here." Kordell did not state the identity of the person he sought. He then stated, "The defense rests." Kordell neither called the grandfather to the stand, nor explained his absence.

Saesee now argues that Kordell's statement to the jury–"I'm counting on him to tell the truth and corroborate what the girl said"– constitutes a broken promise that prejudiced the outcome of the trial and rendered Kordell constitutionally ineffective.

***Proceedings***. On May 26, 2006, the Tulare County jury found Saesee guilty of one count of first degree murder, one

count of shooting at an inhabited dwelling, and one count of permitting another to shoot from a vehicle. Saesee received a sentence of life without parole and a concurrent term of twenty-five years to life. The California Court of Appeal affirmed the judgment. Relevant to this appeal, the California Court of Appeal concluded that, even assuming that Saesee's trial counsel performed deficiently in referencing Breanna's grandfather during his opening statement, his performance did not prejudice Saesee's trial because his discussion of the grandfather "in no way amounted to a *promise* that he would produce the grandfather as a witness." The California Supreme Court denied review on February 20, 2008. On April 30, 2008, the Tulare County Superior Court denied Saesee's habeas petition. On June 12, 2008, the Fifth District Court of Appeal denied Saesee's habeas petition, finding that Saesee could not establish prejudice. On July 28, 2008, Saesee filed a habeas petition in the district court. On November 17, 2009, John Dixon, magistrate judge, recommended that the petition for writ of habeas be denied. On March 19, 2010, Judge Wanger adopted the findings of the magistrate judge. Judge Wanger stated, "While the statement made by Petitioner's trial counsel may be construed as a promise to produce the grandfather, the statements are not so clear cut that the State court's finding, that there was no promise, was objectively unreasonable." On April 16, 2010, Saesee filed a notice of appeal.

On January 20, 2012, this Court issued a certificate of appealability.

***Standard of Review***. "This court reviews the district court's denial of a 28 U.S.C. § 2254 habeas petition de novo." *Williams v. Warden*, 422 F.3d 1006, 1008 (9th Cir. 2005). Because Saesee filed this petition after April 24, 1996, the

Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996 governs review of his claims. *Phillips v. Woodford*, 267 F.3d 966, 973 (9th Cir. 2001).

## ANALYSIS

The California Court of Appeal concluded that Saesee had not demonstrated ineffective assistance of counsel. Under AEDPA, a federal court may grant habeas relief when a state court decision "involved an unreasonable application of[] clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d). A state court unreasonably applies clearly established federal law when it "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 413 (2000)). The application must be "more than incorrect or erroneous." *Id.* It must be "objectively unreasonable," *id.*, such that it is "beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 131 S. Ct. 770, 787 (2011).

Under AEDPA, the principles of *Strickland v. Washington* are "clearly established" for the purposes of deciding ineffective assistance of counsel claims. *Williams v. Taylor*, 529 U.S. at 390–91. Review of ineffective assistance claims under § 2254(d)(1) is "doubly deferential." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). Relief "may be granted only if the state-court decision unreasonably applied the more general standard for ineffective-assistance-of-counsel claims established by *Strickland*, in which [the

Supreme Court] held that a defendant must show both deficient performance and prejudice in order to prove that he has received ineffective assistance of counsel." *Id*. at 122.

To satisfy the prejudice prong under *Strickland*, a defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). The California Court of Appeal declined to reach the question of whether Saesee's counsel was deficient and we also decline to do so here. *Id.* at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.").

This is a case of first impression in the Ninth Circuit. In adjudicating Saesee's ineffective assistance claim, the California Court of Appeal and the district court assumed that, in some cases, defense counsel's unfulfilled promise to produce a witness at trial could constitute ineffective assistance of counsel, in accordance with the decisions of the First, Third, and Seventh Circuits and two federal district courts in California. Most recently, in *Williams v. Woodford*, 859 F. Supp. 2d 1154, 1173 (E.D. Cal. 2012), Chief Judge Kozinski applied the approach of the First, Third, and Seventh Circuits to find that the prejudice caused by defense counsel's broken promise to the jury satisfied the *Strickland* standard, and granted habeas relief under AEDPA. There, Williams's counsel had promised in his opening statement that the jury would hear from Williams and two witnesses, Oliphant and Pollard, who would confirm Williams's alibi. *Id*. at 1162. Judge Kozinski stated that "[w]hat fatally undermined Williams's defense were counsel's unfulfilled

promises that these witnesses would testify." *Id*. at 1173. Judge Kozinski reasoned that a promise to present a particular piece of testimony creates expectations in jurors' minds:

> By promising the jury that Williams would testify, and would do so as to specific facts, the lawyer raised certain expectations in the jurors' minds, expectations that would count heavily against Williams when they went unfulfilled. The lawyer enumerated the various ways in which Williams would cast doubt on the government's case: He would deny that he committed the crime . . . , While a defendant's denials are not the strongest evidence, the failure to make those denials, when the jury was promised that he would, left the strong inference that everything Williams failed to deny must, in fact, be true.

*Id*. at 1164. Judge Kozinski also noted the decision of Judge Feess of the Central District of California in *Madrigal v. Yates*, 662 F. Supp. 2d 1162, 1183 (C.D. Cal. 2009), which embraced the reasoning of the First and Seventh Circuits. *Id*.

In *Ouber v. Guarino*, 293 F.3d 19 (1st Cir. 2002), the First Circuit granted the petitioner, who had been charged with drug trafficking, habeas relief under AEDPA. *Id*. at 34–36. In his opening statement, Ouber's counsel framed the case as hinging upon whether Ouber knew that the envelope she had given to a government undercover narcotics agent contained cocaine. *Id*. at 22. There, counsel's failure to present the promised testimony was an "egregious" error that, "but for its commission, a different outcome might well have eventuated." *Id*. at 33–34; s*ee also Anderson v. Butler*,

858 F.2d 16, 18 (1st Cir. 1988) (finding that counsel was ineffective when he broke a promise he made in his opening statement to present key expert psychiatric witnesses).

The Third Circuit also granted relief using similar reasoning: "The failure of counsel to produce evidence which he promised the jury during his opening statement that he would produce is indeed a damaging failure sufficient of itself to support a claim of ineffectiveness of counsel." *McAleese v. Mazurkiewicz*, 1 F.3d 159, 166 (3rd Cir. 1993). Finally, the Seventh Circuit found that when an attorney fails to produce testimony that he has promised, the damage to a defendant's case is unequivocal:

> Promising a particular type of testimony creates an expectation in the minds of jurors, and when defense counsel without explanation fails to keep that promise, the jury may well infer that the testimony would have been adverse to his client and may also question the attorney's credibility. In no sense does it serve the defendant's interests.

*United States ex rel. Hampton v. Leibach*, 347 F.3d 219, 259 (7th Cir. 2003); *see also Harris v. Reed*, 894 F.2d 871, 879 (7th Cir. 1990) ("When counsel failed to produce the witnesses to support this version, the jury likely concluded that counsel could not live up to the claims made in the opening.").

A juror's impression is fragile. It is shaped by his confidence in counsel's integrity. When counsel promises a witness will testify, the juror expects to hear the testimony. If the promised witness never takes the stand, the juror is left to

wonder why. The juror will naturally speculate why the witness backed out, and whether the absence of that witness leaves a gaping hole in the defense theory. Having waited vigilantly for the promised testimony, counting on it to verify the defense theory, the juror may resolve his confusion through negative inferences. In addition to doubting the defense theory, the juror may also doubt the credibility of counsel. By failing to present promised testimony, counsel has broken "a pact between counsel and jury," in which the juror promises to keep an open mind in return for the counsel's submission of proof. *Williams*, 859 F. Supp. 2d at 1167. When counsel breaks that pact, he breaks also the jury's trust in the client.  Thus, in some cases–particularly cases where the promised witness was key to the defense theory of the case and where the witness's absence goes unexplained–a counsel's broken promise to produce the witness may result in prejudice to the defendant.

In order for the prejudice prong to be satisfied, however, it is essential that a promise be made. Of course, had the California Court of Appeal concluded that Kordell broke a promise to present a witness, it was free to assign prejudice to the broken promise. However, no clearly established federal law required the California Court of Appeal to presume prejudice for a broken promise or to assign the alleged broken promise any particular prejudicial weight. *See Ouber*, 293 F.3d at 22. In any event, the California Court of Appeal reasonably concluded that Kordell did not make a promise to the jury in the opening statement. A promise creates expectation: did the counsel say that the testimony *will* happen, and did he present such testimony as supportive of his theory? Here, Kordell had told the jury that the grandfather was "mad as hell" that his granddaughter spoke to the police and was subpoenaed. Viewed contextually,

Kordell's following statement–"I'm counting on him [the grandfather] to tell the truth and corroborate what the girl said"–was not a promise that the grandfather would definitely testify, but rather an expression of hope that the grandfather might in fact appear. Although Kordell did inform the jury of the grandfather's existence, he left the jury open to the possibility that the grandfather would not appear. Put simply, Kordell did not say, "This testimony *will* happen." His lack of certainty is fatal to Saesee's claim that a promise was made.

We cannot say that the California Court of Appeal was unreasonable in concluding that Saesee's trial counsel had not made a promise to produce Breanna's grandfather as an alibi witness. No promise, no prejudice.

*Conclusion*. The judgment of the district court is **AFFIRMED**.