**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

SEP 23 2014

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS



DAVID FOSTER,

                Petitioner - Appellant,

    v.

STATE OF OREGON,

                Respondent - Appellee.

No. 12-35865

D.C. No. 3:06-cv-00689-ST

MEMORANDUM[*]

Appeal from the United States District Court
for the District of Oregon
Marco A. Hernandez, District Judge, Presiding

Argued and Submitted July 8, 2014
Portland, Oregon

Before: PREGERSON, PAEZ, and WATFORD, Circuit Judges.


    David Foster appeals the district court's denial of his petition for a writ of

habeas corpus under 28 U.S.C. § 2254.  We have jurisdiction under 28 U.S.C. §§

1291, 2253(c), and we affirm.

---

     [*]    This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

**1.** Foster challenges a number of the state court's factual findings as unreasonable under 28 U.S.C. § 2254(d)(2). To find a state court's determination of facts unreasonable, "it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision." *Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004). "Rather, we must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record." *Id.*

The state court's finding that Hendershott declined to call Dr. Griest because she told him that, "it would not be a good idea to have her testify as she would have to largely agree with the prosecution experts," is not unreasonable. It is supported by both Melvin-Davidson's and Hendershott's testimony. Moreover, Dr. Griest's affidavit does not directly contradict the trial attorneys' accounts, and the state court considered the relevant evidence in making its factual findings. *See id.* at 1008.

The state court's finding that either Melvin-Davidson or Davis had supplied Dr. Griest with all pertinent information as it became available is also not unreasonable. Melvin-Davidson and Hendershott both testified that this was the case, and Dr. Griest's letter also confirms that she was provided with relevant background material. The only medical evidence Foster has identified that Dr.

Griest did not receive in advance was B.F.'s retinal slides. However, Melvin-Davidson testified that the slides became available "very late in the case," and she could not remember if they were available even the day before trial. In light of this evidence, the state court reasonably found that Dr. Griest received all pertinent evidence as it became available.

Finally, the state court's finding that Foster failed to produce evidence that there was an expert available to testify that all of B.F.'s injuries could have been caused by non-criminal reasons is also reasonable. Hendershott and Melvin-Davidson both testified that Dr. Griest could not be called to testify because she had developed an unfavorable opinion mid-trial. It was not unreasonable for the state court to credit the lawyers' recollections. Nor does Dr. Jollo's affidavit—the only other piece of evidence Foster identifies to challenge the state court's finding—render the state court's finding unreasonable. Dr. Jollo offered only general opinions about possible non-criminal causes of retinal hemorrhages and seizures; he never stated that he reviewed B.F.'s records and he did not offer any opinions on the possible causes of the constellation of symptoms B.F. exhibited.

**2.** Foster also argues that the state court unreasonably applied *Strickland v. Washington*, 466 U.S. 668 (1984), in rejecting his ineffective assistance of counsel claim. 28 U.S.C. § 2254(d)(1). To prevail on an ineffective assistance of counsel

claim, Foster must show both deficient performance and prejudice. *Strickland*, 466 U.S. at 687. Deficient performance means that trial "counsel's representation fell below an objective standard of reasonableness." *Id.* at 687–88. Our review of counsel's performance is "highly deferential," and we "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

"[I]n some cases—particularly cases where the promised witness was key to the defense theory of the case and where the witness's absence goes unexplained—a counsel's broken promise to produce the witness" may amount to prejudicial deficient performance. *Saesee v. McDonald*, 725 F.3d 1045, 1049–50 (9th Cir. 2013). This, however, is not one of those cases. Foster's counsel was faced with an unforeseen trial development—newly available retinal slides had apparently led Dr. Griest to agree with the State's medical witnesses. In light of this development, counsel was faced with "quite a dilemma"—counsel could break their promise to the jury and risk losing the jury's trust, or counsel could call their expert to the stand anyway and risk detrimental testimony. Counsel chose the former. Counsel has "wide latitude . . . in making [such] tactical decisions." *Strickland*, 466 U.S. at 689. The state court could reasonably have concluded that the decision to break a promise made in opening statements in light of these

unforeseen circumstances was a "sound trial strategy." *Id.* (internal quotation marks and citations omitted).

**3.** Finally, Foster raises several unexhausted ineffective assistance of counsel claims. We may reach the merits of a petitioner's unexhausted and procedurally defaulted claims if he "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Schlup v. Delo*, 513 U.S. 298, 316 (1995). A petitioner can meet this standard by presenting "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. The new evidence must be so significant that when all of the evidence is viewed together, it becomes "more likely than not that no reasonable juror would have convicted [Foster]." *Id.* at 327; *accord House v. Bell*, 547 U.S. 518, 538 (2006); *Larsen v. Soto*, 742 F.3d 1083, 1096 (9th Cir. 2013).

Foster has not met this demanding standard. Although Foster's newly-retained experts provide a non-criminal explanation for B.F.'s injuries, the State's experts continue to opine that the constellation of symptoms B.F. displayed are most likely caused by abuse and they dispute many of the conclusions of Foster's experts. Foster's evidence only renders it possible that a reasonable juror would

not have convicted; it does not so undermine the State's case that it is more likely than not that no reasonable juror would have convicted. *See Shumway v. Payne*, 223 F.3d 982, 989–90 (9th Cir. 2000). Accordingly, we do not review the merits of Foster's unexhausted ineffective assistance of counsel claims.

The district court also did not abuse its discretion in denying a request for an evidentiary hearing on Foster's actual innocence claim. The medical evidence presented is thorough, and the experts have all had an opportunity to respond to each other. Ultimately, however, the evidence is inconclusive. Foster has not established that "an evidentiary hearing would produce evidence more reliable or more probative than the medical records and expert opinion[s] that were before the district court." *Griffin v. Johnson*, 350 F.3d 956, 966 (9th Cir. 2003).

**AFFIRMED.**