NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-3648
_____

CRAIG ELIAS,

Appellant

v.

SUPERINTENDENT FAYETTE SCI;
THE ATTORNEY GENERAL OF THE STATE OF PENNSYLVANIA
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-14-cv-01337)
Magistrate Judge:  Hon. Lisa P. Lenihan
_____

Submitted Under Third Circuit LAR 34.1(a)
January 22, 2019

Before:  JORDAN, KRAUSE, and ROTH, *Circuit Judges.*

(Filed: May 30, 2019)
_____

OPINION*
_____

_____

  * This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

JORDAN, *Circuit Judge*.

Craig Elias, serving a life sentence for murder and related serious crimes, appeals the order of the District Court denying his petition for a writ of habeas corpus. For the reasons that follow, we will affirm.

## I.    Background[1]

### A.    The Underlying Charges

Elias, Jared Henkel, and Jared Lischner were drug dealers. After a dispute with their suppliers, Anthony Brownlee and Andrew Jones, the three men kidnapped and beat them. Jones ended up dead. Jared Henkel enlisted his brother, Matthew Henkel, to borrow a pickup truck to help dispose of Jones's body. Elias and Matthew Henkel wrapped Jones's body in garbage bags and put it in the pickup truck. The pair procured

---

[1] Elias claims ineffective assistance of counsel. We review his claim according to the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254, and we consider "the facts in light of the evidence presented in the State court proceeding." *Id.* at § 2254(d)(2). A state court's factual determinations are afforded a presumption of correctness that can only be rebutted by clear and convincing evidence. *Lambert v. Blackwell*, 387 F.3d 210, 235 (3d Cir. 2004). As the District Court noted, the "Petitioner does not argue that he is entitled to relief, nor should he be, under § 2254(d)(2)[]" (App. at 50), which allows for a habeas writ to issue if the state court proceedings "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented … ." 28 U.S.C. § 2254(d)(2). Thus, we accept the state court's factual findings. Because the Pennsylvania Superior Court adopted the "thorough and well-reasoned opinion dated February 17, 2012 of the distinguished Judge Jeffrey A. Manning[]" (App. at 60,) we adopt the facts concerning the crime as described in the Pennsylvania Superior Court's decision and those of the trial as described by Judge Manning, presiding in the Post Conviction Relief Act ("PCRA") Court, and adopted by the Superior Court.

chains and weights, drove to a bridge in Steubenville, Ohio, and dropped Jones's weighted corpse into a river. Brownlee was let go.

Jones's disappearance was investigated by the police. Eventually, Matthew Henkel agreed to cooperate with police and led them to Jones's body. The Commonweath brought charges, and Elias's case was joined with Jared Henkel's and Lischner's. Matthew Henkel was granted full immunity in exchange for his cooperation and testimony.

**B.     Elias's Trial**

At trial, Elias was represented by attorney Duke George. Their agreed-upon strategy was for Elias to testify that he did not murder Jones and, instead, that Matthew Henkel was the murderer. In keeping with that, during his opening statement, George told the jury that Elias would testify that Matthew Henkel – not Elias – was responsible for Jones's death.

The prosecution presented only one witness who testified that Elias killed Jones. That was Matthew Henkel. After the close of the prosecution's case, Jared Henkel presented his defense first. Unexpectedly, Jared and Matthew Henkel's older brother, Bruce Henkel, Jr. ("Bruce Junior"), and their father, Bruce Henkel, Sr. ("Bruce Senior"), took the stand in an effort to discredit Matthew's testimony.

Jared Henkel's lawyer began by recalling Matthew to the stand and asking him whether he had told Bruce Junior that he wanted to kill Jones, which Matthew denied. The lawyer then called Bruce Junior, who testified that Matthew had been upset with Jones for making fun of him for being gay and that Matthew had told Bruce Junior on

3

multiple occasions that he wanted to kill Jones. Next, Bruce Senior testified that Matthew had confessed to him that he had killed Jones and had recounted the gruesome details of the murder. The jury was instructed to consider Bruce Junior's and Bruce Senior's testimony only for its effect on the credibility and weight of Matthew's testimony, and not as substantive evidence. Jared Henkel's defense then rested.

At that point, Elias was scheduled to present his defense, but George asked for and was given a five-minute recess to use the restroom. In requesting that recess, George reiterated, in front of the jury, that he was going to call Elias to the stand. But, once out of the courtroom, the testimony just given by Bruce Junior and Bruce Senior prompted George to "reconsider calling his client to the stand." (App. at 71.) During the recess, which lasted much longer than the stated five-minutes, George counseled Elias to change course and not testify.[2] He felt, and apparently advised Elias that, "it would be in [Elias's] best interest for him not to testify[,]" because Bruce Senior's testimony "was pretty strong evidence with relationship to the defense of all three of the defendants[,]" (App. at 72,) and was all that was "needed to argue that the Commonwealth failed to meet its burden." (App. at 81.) George did not explain the difference between substantive and impeachment evidence to Elias, but he also did not represent that Bruce

---

[2] Before the PCRA Court, Elias and George presented different versions of how long and what occurred during the recess. Judge Manning, however, made a credibility determination that George's version of events was accurate. Here, those explicit "finding[s] [are] presumptively correct and should not be disturbed by a federal court on habeas review if [they are] fairly supported by the record[,]" *McAleese v. Mazurkiewicz*, 1 F.3d 159, 172 (3d Cir.1993), which they are.

4

Senior's testimony was admissible as substantive evidence. Upon hearing about the proposed change in strategy, both co-defendants' attorneys tried to convince George that he was making a mistake. George was adamant, however, and, after a lengthy conversation, Elias heeded his advice. When the trial resumed, Elias rested.

The court immediately conducted a colloquy to ensure that Elias understood his rights and that he himself had made the decision not to testify, in spite of the promise to the jury that he would.[3] The court also instructed the jury that it could not use Elias's decision not to testify as evidence against him.[4] After deliberating, the jury found Elias

---

[3] The colloquy included this exchange:
The Court: Mr. Elias, it is perhaps somewhat slightly more troublesome in your instance because your attorney did make representations that you would testify.…
Elias: Yes, sir.
Court: Do you understand that the Court will be very careful in instructing the jury that they can't … hold your decision to remain silent at this time against you. You have to understand this, and Mr. George knows this, he cannot argue to the jury any of the facts that he intended to portray through your testimony in closing.
Elias: I understand. (App. at 1385.)

[4] The trial court instructed the jury: "Uniquely, we had an issue, as you recall, attorney Duke George on behalf of Mr. Elias opened and he told you that his client would take the stand and he made statements concerning what his client would say. Keep in mind that those statements that he made are not evidence. And since Mr. Elias chose, which is his constitutional right, to remain silent, you may not consider any of those statements regarding what he was proposed to have said had he testified in any fashion whatsoever. You must exclude them from your consideration. You must not consider any statements or representations about what Mr. Elias allegedly would have said either presented to you by Mr. George or by any other counsel, and you should not speculate or consider any motivation which you may or may not believe that he had which led to his decision not to testify. As I told you, he has an absolute right not to testify and you cannot infer or presume that he must be guilty from his decision to remain silent." (App. at 1430-31.)

5

guilty of first-degree murder, criminal conspiracy, two counts of kidnapping, robbery, aggravated assault, simple assault, and abuse of a corpse. He was sentenced to life in prison for first-degree murder and 10 to 20 years for the other offenses.

## C. Post-Trial Proceedings

After his conviction, Elias filed a direct appeal in the Superior Court of Pennsylvania. *Commonwealth v. Henkel*, 938 A.2d 433, 436 (Pa. Super. Ct. 2007). While that appeal was pending, he petitioned the Superior Court to remand the case in light of after-discovered evidence. *Id.* at 437. The Superior Court remanded the case, but the trial court, following a three-day hearing, concluded that no new material evidence existed. *Id.* at 437-38. The Superior Court then affirmed Elias's judgment of sentence, *id.* at 447, and the Supreme Court of Pennsylvania denied Elias's petition for allowance of appeal, *Commonwealth v. Elias*, 955 A.2d 356 (Pa. 2008) (Table).

Elias next filed a petition pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"). Among his arguments was that George was ineffective for advising him to not testify, especially after promising the jury that he would. The PCRA Court, Judge Manning presiding, held an evidentiary hearing on that claim, at which George, Elias, and other witnesses testified. After the hearing, Judge Manning denied post-conviction relief, concluding that Elias's ineffective assistance claim failed on the merits. The Superior Court upheld that ruling on appeal, adopting Judge Manning's decision as its own. Elias moved for reargument, which was denied, and the Supreme Court of Pennsylvania denied review.

In 2014, Elias filed a timely habeas petition in the United States District Court for the Western District of Pennsylvania.  He asserted that "his trial counsel provided ineffective assistance when he advised him not to testify[,] rendering his waiver of that right unknowing and unintelligent."  (App. at 16 (District Court's opinion recounting Elias's argument).)  In November 2017, the District Court denied Elias's habeas petition on the merits.[5]  This appeal followed.

## II.    Discussion[6]

Elias has been granted a certificate of appealability on one issue: whether the Superior Court, through adoption of Judge Manning's opinion, unreasonably applied the United States Supreme Court's test for ineffective assistance of counsel in deciding that attorney George's advice to Elias to forego testifying did not support an ineffectiveness claim, even though George had repeatedly told the jury that Elias would take the stand.[7]  We agree with the District Court's conclusion that Elias is not entitled to relief.

### A.    Legal Standard

The Supreme Court held in *Strickland v. Washington* that claims of ineffective assistance of counsel are evaluated under a two-pronged test.  466 U.S. 668, 687-88 (1984).  First, the complaining "defendant must show that counsel's representation fell

---

[5]  A Magistrate Judge sat as the District Court pursuant to 28 U.S.C. § 636(c).

[6]  The District Court had jurisdiction under 28 U.S.C. §§ 2254(a) and 2241(a).  We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253.  "We review *de novo* whether the District Court appropriately applied [28 U.S.C. § 2254's] standards of review[,]" in cases involving AEDPA.  *Taylor v. Horn*, 504 F.3d 416, 428 (3d Cir. 2007).

[7]  We denied a certificate of appealability for Elias's claim of trial-court error.

7

below an objective standard of reasonableness" "under prevailing professional norms." *Id.* at 688. Second, the defendant must show that prejudice resulted, such "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 687, 694. To qualify for relief, the defendant must satisfy both prongs of the test.

In the context of this habeas petition, we review Elias's ineffective assistance claim through the lens of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254. *See Harris v. Ricci*, 607 F.3d 92, 96 (3d Cir. 2010) ("Because this case arises from a state court proceeding in which the merits of [petitioner's] sole claim on appeal were adjudicated, the standards established by [AEDPA] apply."). Hence, we cannot disturb a ruling of the state court unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[,]" or it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). When reviewing a habeas petition based on ineffective assistance of counsel, AEDPA requires that we "give wide deference to the state court's conclusions, disturbing them only if the state court unreasonably applied … the prongs of *Strickland*." *Collins v. Sec'y of Pa. Dep't of Corr.*, 742 F.3d 528, 546-47 (3d Cir. 2014). We generally review only "[t]he highest state court decision reaching the merits of a habeas petitioner's claim[.]" *Adamson v. Cathel*, 633 F.3d 248, 255 (3d Cir. 2011) (citation omitted). Here, because the Superior Court adopted Judge Manning's decision on Elias's ineffective assistance claim, Judge Manning's decision is the relevant

8

state ruling. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991) ("To decide the present case, therefore, we begin by asking which is the last *explained* state-court judgment on the ... claim.").

### B.      *Strickland* **Analysis**

Under AEDPA, to satisfy the deficiency prong of *Strickland*, Elias must show that Judge Manning unreasonably held that Elias was not denied "reasonably effective assistance" of counsel. 466 U.S. at 687. Judge Manning concluded that attorney George's assistance was not constitutionally deficient because George's "advice that the testimony of Bruce [Senior] gave the defense the opportunity to argue that the defendant did not commit the murder was accurate and not wholly unreasonable." (App. at 79.) The Judge explained that, "[i]f believed, Bruce [Senior's] testimony would have impeached the testimony of the only witness that said … Elias killed … Jones[.]" (App. at 79.) Thus, as the Judge saw it, it was reasonable for George to advise Elias that the unexpected testimony provided Elias what he "'needed' with regard to damage and credibility of Matthew Henkel." (App. at 80.) Judge Manning further found as a fact that George had not advised Elias as to whether Bruce Senior's testimony was substantive evidence.

Elias contends that Judge Manning's conclusions were unreasonable, first, because George broke his promise to the jury that Elias would testify, and second, because Elias was unaware that Bruce Senior's testimony was not substantive evidence, which rendered the waiver of his right to testify unknowing and involuntary. Both of Elias's arguments,

9

however, fall short, given the deference afforded to state court conclusions on AEDPA review of a habeas petition.

Turning to Elias's first argument, it is true that a failure by counsel to produce promised evidence to the jury can support a claim of ineffective assistance. *McAleese v. Mazurkiewicz*, 1 F.3d 159, 166 (3d Cir. 1993). But, backing off of a promise to give certain evidence is unlikely to support an ineffective assistance claim when there are changed circumstances, because "unexpected developments sometimes may warrant changes in previously announced trial strategies." *Ouber v. Guarino*, 293 F.3d 19, 29 (1st Cir. 2002).[8]

Here, we cannot say that the state court was unreasonable in concluding that an unexpected development could justify a change in strategy. The decision by Bruce Junior and Bruce Senior to come forward and testify was unexpected. Those two witnesses testified that Matthew Henkel, and not Elias, had killed Jones. Both, as close relatives of

_____

[8] Elias's arguments to the contrary are unavailing. He relies on six circuit cases to argue that failing to present promised evidence necessitates a finding of ineffective assistance. But in three of those cases no changed circumstances were present. *See U.S. ex rel. Hampton*, 347 F.3d at 238 ("[N]othing occurred during the State's case against Hampton that altered the pros and cons of Hampton taking the stand."); *Ouber*, 293 F.3d at 35-36 (no changed circumstances from two earlier trials where the defendant did testify); *Anderson v. Butler*, 858 F.2d 16, 19 (1st Cir. 1988) (same). In two other cases, the court found no promise was made at all. *McAleese*, 1 F.3d at 167; *Saesee v. McDonald*, 725 F.3d 1045, 1050 (9th Cir. 2013). The sixth case, *Harris v. Reed*, 894 F.2d 871 (7th Cir. 1990), reviewed a district court's, not a state court's, determination that counsel's performance was adequate and concluded it was not since "counsel's overall performance, including his decision not to put on any witnesses in support of a viable theory of defense, falls outside the wide range of professionally competent assistance." *Id.* at 878. No federal court has found it unreasonable for a state court to conclude that a change in circumstances warranted a change in trial strategy.

10

Matthew's, were also arguably more powerful witnesses against Matthew than Elias would have been, since Elias's testimony would obviously have been self-serving. Furthermore, putting Elias on the stand would have opened him to cross-examination, a not insignificant risk.[9] It was thus not unreasonable for Judge Manning to conclude that the testimony of Matthew's brother and father constituted a change in circumstances allowing George to change his trial strategy. *See Diggs v. Owens*, 833 F.2d 439, 446 (3d Cir. 1987) (noting that a decision not to call a self-interested witness was strategically sound since it could cause "the jury to focus its attention on a defense that seemed contrived rather than on the possible weakness of the state's case").

Elias, however, argues that the change of circumstances did not force an abandonment of the earlier agreed-on trial strategy and that his testimony would only have bolstered his case. According to Elias, "Judge Manning could not identify anything gained from counsel's approach not to call [Elias] to the witness stand." (Opening Br. at 21 (citation omitted).) But, as just noted, there was something to be gained: the avoidance of cross-examination. More importantly, even if George's advice that Elias should not testify was wrong in retrospect, the state court was bound to "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, reviewed as of the time of counsel's conduct." *Parrish v. Fulcomer*, 150 F.3d 326, 328

---

[9] While Judge Manning did not explicitly mention the risk of cross-examination as a separate reason that George's change in strategy was reasonable, we understand that the inherent risk of cross-examination was implicit in his discussion of the relative benefits of Elias taking the stand after Bruce Senior had testified. *See Taylor,* 504 F.3d at 433 (explaining that AEDPA deference applies to implicit as well as explicit factual findings).

(3d Cir. 1998) (citations omitted).  "The defendant bears the burden of overcoming the presumption that 'the challenged action might be considered sound trial strategy.'" *Jacobs v. Horn*, 395 F.3d 92, 118 (3d Cir. 2005) (citation omitted).  Under that standard, Judge Manning did not unreasonably apply *Strickland* in concluding that George's decision to shift trial strategy was within the bounds of the broad latitude trial attorneys have to advise their clients.

Elias's second argument – that, had he known the difference between substantive evidence and impeachment evidence, he would have testified and thus he did not voluntarily waive his right to testify – is also unpersuasive.  We cannot label as unreasonable Judge Manning's conclusion that Elias voluntarily waived his right to testify.  Judge Manning found, based on evidence in the record, that George had only "advise[d] [Elias] that the impeachment value of the testimony of Bruce [Senior] provided [Elias] with what they 'needed,'" and that he did not tell him the evidence could be used substantively.  (App. 79-80.)  Here, "[t]he factual record to which we must defer demonstrates that [George's] advice went no further than counseling" about risk, as George "did not suggest to [Elias] that he could not testify[.]"  *Campbell v. Vaughn*, 209 F.3d 280, 291 (3d Cir. 2000).  Thus, it was reasonable to decide that such advice did not render involuntary Elias's decision to forego testifying.

Because Elias's argument fails on the deficiency prong, we need not determine whether he was prejudiced.  Judge Manning's determination that Elias was not denied reasonably effective assistance of counsel was itself within the bounds of reason, and that is all that *Strickland* and AEDPA demand.

12

**III. Conclusion**

For the foregoing reasons, the District Court properly denied Elias's habeas corpus petition. We will therefore affirm the judgment.