FILED

12/08/2023

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 11, 2023

**ELVIN PEARSON v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Davidson County**
**No. 2007-C-1912    Monte Watkins, Judge**
_____

**No. M2021-01560-CCA-R3-PC**
_____

CAMILLE R. MCMULLEN, P.J., dissenting.

An attorney's failure to fulfill a promise made in opening statements "may be justified when *'unexpected developments* warrant changes in previously announced trial strategies.'" United States ex rel. Hampton v. Leibach, 347 F.3d 219, 257 (7th Cir. 2003) (quoting Ouber v. Guarino, 293 F.3d 19, 29 (1st Cir. 2002) (emphasis added)). Otherwise, "little is more damaging than to fail to produce important evidence that had been promised in an opening [statement]." Anderson v. Butler, 858 F.2d 16, 17 (1st Cir. 1988), aff'd sub nom. Commonwealth v. Anderson, 408 Mass. 803, 563 N.E.2d 1353 (1990). The reason being that the jury may infer that the testimony would have been adverse to the defendant and may also question the attorney's credibility. Hampton, 347 F.3d at 259. Because the record in this case clearly shows that no unexpected developments occurred which justified trial counsel's decision not to call Reid, the only alibi witness, as promised in the opening statement, I must part ways with the majority and respectfully dissent.

As touched upon by the majority, an attorney's failure to produce evidence that he or she promised the jury in opening statements may be deficient. State v. Zimmerman, 823 S.W.2d 220, 225-26 (Tenn. Crim. App. 1991). This court has cautioned that "[t]he trial attorney should only inform the jury of the evidence that he is sure he can prove.… His failure to keep [a] promise [to the jury] impairs his personal credibility. The jury may view unsupported claims as an outright attempt at misrepresentation." Id. at 225 (quoting McCloskey, *Criminal Law Desk Book*, § 1506(3)(O) (Matthew Bender, 1990)). In my view, the majority misses the mark in this case by attempting to distinguish the facts of Zimmerman without recognizing that the key inquiry is whether there were developments during trial that prompted a legitimate change in strategy. See id. at 225-26; see also Felts v. State, 354 S.W.3d 266, 284-85 (Tenn. 2011). The Tennessee Supreme Court has highlighted that "[m]aking… promises and then abandoning them for reasons that were apparent at the time the promises were made cannot be described as legitimate trial strategy." Felts, 354 S.W.3d at 285 (quoting Hampton, 347 F.3d at 259). Abandoning a

1

promise in response to unexpected developments in the proof presented at trial, however, is not deficient. Id. at 284-85.

In Johnson, this court held that an attorney's failure to call an expert witness to testify as promised in voir dire and opening statements was deficient. Johnson v. State, 145 S.W.3d 97, 118-19 (Tenn. Crim. App. 2004). The defendant was charged with first degree murder, and the theory of defense was that the defendant acted under extreme passion and emotional duress. Id. at 118. During voir dire and opening statements, the attorney informed the jury that a psychological expert would testify about the defendant's mental state at the time of the offense. Id. The attorney then chose not to call the expert to testify, despite the expert being an essential component of the defense theory. Id. This court reasoned that:

> [T]rial counsel failed to keep their promises to the jury, without a reasonable basis for such departure. All potential pitfalls regarding [expert's] testimony were known and considered by counsel prior to trial. If counsel had determined that a chance existed that [expert] would not be called to testify at trial, counsel should not have assured the jury that they would hear his expert testimony, or, in the alternative, should have offered the jury an explanation for the failure to call the expert. We note that "[t]he first thing that the ultimately disappointed jurors would believe, in the absence of some other explanation, would be that the [expert was] unwilling, viz., unable, to live up to [his] billing."

Id. at 119 (quoting Anderson, 858 F.2d at 17). Therefore, the attorney's failure to call the promised witness was deficient. Id. at 118-19.

Tennessee courts and courts in other jurisdictions have often held that an attorney's failure to produce evidence that he or she promised during opening statements prejudiced the defendant. See, e.g., Johnson, 145 S.W.3d at 119; Anthony v. State, No. M2003-02272-CCA-R3-PC, 2004 WL 1947811, at *4 (Tenn. Crim. App. Aug. 11, 2004); English v. Romanowski, 602 F.3d 714, 729-30 (6th Cir. 2010). The First Circuit has emphasized that the error of failing to present the promised testimony of an important witness is "not small, but monumental." Ouber, 293 F.3d at 33. The Ninth Circuit has elaborated that:

> A juror's impression is fragile. It is shaped by his confidence in counsel's integrity. When counsel promises a witness will testify, the juror expects to hear the testimony. If the promised witness never takes the stand, the juror is left to wonder why. The juror will naturally speculate why the witness backed out, and whether the absence of that witness leaves a gaping hole in the defense theory. Having waited vigilantly for the promised testimony, counting on it to verify the defense theory, the juror may resolve his confusion through negative inferences. In addition to doubting the defense

theory, the juror may also doubt the credibility of counsel. By failing to present promised testimony, counsel has broken "a pact between counsel and jury," in which the juror promises to keep an open mind in return for the counsel's submission of proof. When counsel breaks that pact, he breaks also the jury's trust in the client. Thus, in some cases—particularly cases where the promised witness was key to the defense theory of the case and where the witness's absence goes unexplained—a counsel's broken promise to produce the witness may result in prejudice to the defendant.

Saesee v. McDonald, 725 F.3d 1045, 1049-50 (9th Cir. 2013) (quoting Williams v. Woodford, 859 F.Supp.2d 1154, 1167 (E.D. Cal. 2012)).

Applying similar principles, the Sixth Circuit has held that an attorney's failure to present a promised witness prejudiced the defendant. English, 602 F.3d at 729-30. In English, the defendant was charged with assault with intent to murder. Id. at 717-18. The defense's theory of the case was self-defense. Id. at 719. The attorney told the jury in opening statements that an eyewitness would confirm that the defendant acted in self-defense. Id. The attorney, however, did not call the witness to testify. Id. The Sixth Circuit emphasized that the broken promise not only damaged the credibility of the attorney and the defendant, but also damaged the credibility of the defendant's testimony specifically. Id. at 729. Because the attorney promised that a witness would corroborate the defendant's account of the events and then broke that promise, the jury likely made negative inferences about the truthfulness of the defendant's account. Id. In light of the lack of overwhelming evidence of guilt, this loss of credibility, in addition to the admission of inflammatory testimony regarding the witness, prejudiced the defendant. Id.

In my view, trial counsel's failure to call Reid to testify as promised in his opening statement was deficient. See Johnson, 145 S.W.3d at 118-19. The present case is nearly identical to Johnson. See id. The theory of defense was that the Petitioner could not have committed the offense because he was with Reid and their child the entire day. During opening statements, trial counsel twice emphasized that Reid would testify and corroborate the Petitioner's alibi. Trial counsel agreed at the post-conviction evidentiary hearing that Reid was "a very integral part of [the Petitioner's] alibi" because she was the only other adult that was with him during the entirety of the relevant time period. Still, trial counsel chose not to call Reid to testify or explain to the jury why they did not hear from her.

Trial counsel's decision not to call Reid to testify was based on his concern that the jury would not find Reid to be reliable. Trial counsel testified at the post-conviction evidentiary hearing that he "thought it was going to be damaging that she was testifying while she was incarcerated" and worried that her past crimes of dishonesty "were going to be concerning in front of a jury." He also testified that he thought that the car dealership employee, though only a partial alibi witness, was more important because he was an unbiased third party. Like Johnson, however, the potential pitfalls regarding Reid's

3

testimony—her incarceration, her criminal history, and her bias—were known and considered by counsel before trial. 145 S.W.3d at 119. Trial counsel agreed at the post-conviction evidentiary hearing that he was aware of Reid's criminal history prior to trial, and that he knew at the time of his opening statement that Reid was incarcerated. There were no developments or surprises during trial that warranted changing his decision to call Reid to testify. If there was a chance that he would not call Reid due to his concerns about her reliability, he should not have assured the jury that they would hear from her. Id. at 119. For these reasons, trial counsel's failure to call Reid to testify as promised during opening statements was deficient. See also Myers v. Neal, 975 F.3d 611, 621 (7th Cir. 2020) (noting that "counsel's false promises are indefensible—a clear instance of deficient performance").

Trial counsel's failure to call Reid to testify as promised in his opening statement was also prejudicial. See Johnson, 145 S.W.3d at 119; English, 602 F.3d at 729-30. Without this broken promise, there is a reasonable probability that the result of the proceedings would have been different. Like English, this broken promise not only damaged the credibility of trial counsel and the Petitioner, but also damaged the credibility of the Petitioner's alibi testimony specifically. See 602 F.3d at 729. Because trial counsel promised that Reid would corroborate the Petitioner's alibi and then failed to call Reid to testify, the jury likely made negative inferences about the truthfulness of the Petitioner's alibi testimony. See id. As highlighted in Johnson, the first thing that the jury would believe is that Reid was unwilling or unable to provide the promised testimony. 145 S.W.3d at 118-19. In other words, the jury may have inferred that Reid did not testify because she could not corroborate the Petitioner's alibi, and therefore the Petitioner must be lying about being with her—and not at the crime scene—when the shooting occurred.

Moreover, the evidence of the Petitioner's guilt is not overwhelming. See English, 602 F.3d at 729. The State presented no physical evidence connecting the Petitioner to the offense. Instead, the State's case relied on the identifications of Comer, Newsom, and Carney. However, certain factors cast doubt on their identifications. Both Comer and Carney were unable to identify the Petitioner during pre-trial photo lineups. At trial, Carney was initially unable to identify the Petitioner and only did so upon being recalled by the State. Carney also repeatedly agreed that she was uncertain about her identification. Without trial counsel's broken promise and the accompanying loss of credibility, there is a reasonable probability that the Petitioner's alibi testimony, partially supported by the testimony of the car dealership employee, would have resulted in a different outcome.

Accordingly, I would have concluded that the Petitioner was deprived of the effective assistance of counsel, reversed the determination of the trial court on this ground, and remanded the case for a new trial.

_____

CAMILLE R. MCMULLEN, PRESIDING JUDGE

4