**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket Nos. 48467 & 49549**

| | |
|---|---|
| **KENT GLEN WILLIAMS,** )<br>)<br>**Petitioner-Appellant,** )<br>)<br>**v.** )<br>)<br>**STATE OF IDAHO,** )<br>)<br>**Respondent.** )<br>) | **Filed:  January 3, 2024**<br><br>**Melanie Gagnepain, Clerk**<br><br>**THIS IS AN UNPUBLISHED<br>OPINION AND SHALL NOT<br>BE CITED AS AUTHORITY** |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County.  Hon. Steven Hippler, District Judge.

Judgment and order summarily dismissing petition for post-conviction relief; order denying Idaho Rule of Civil Procedure 60(b) motion; <u>affirmed</u>.

Nevin, Benjamin & McKay LLP; Dennis Benjamin, Boise, for appellant.  Dennis Benjamin argued.

Hon. Raúl R. Labrador, Attorney General; Andrew V. Wake, Deputy Attorney General, Boise, for respondent.  Justin Porter argued.

_____

HUSKEY, Judge

Kent Glen Williams appeals from the district court's judgment and order summarily dismissing his petition for post-conviction relief and denying his Idaho Rule of Civil Procedure 60(b)(6) motion.  Williams argues that the district court erred in summarily dismissing his petition for post-conviction relief, failing to rule on his request to appoint counsel to "conduct" an I.R.C.P. 60(b) motion, and denying Williams' I.R.C.P. 60(b)(6) motion.  The district court's judgment and order summarily dismissing the petition for post-conviction relief and the order denying the I.R.C.P. 60(b)(6) motion are affirmed.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

The underlying facts of this case are taken from *State v. Williams*, 163 Idaho 285, 411 P.3d 1186 (Ct. App. 2018):

1

In July 2012, a Caucasian male wearing a maroon shirt, white baseball cap, and large mirrored aviator sunglasses entered a bank in Boise, minutes after opening. The man handed the teller a note demanding money, and the man indicated that he had a gun and would shoot. The teller described the robber, who did not have a mask, as having an upturned nose. The suspect fled the bank after receiving the money.

In April 2015, a 5-foot-8-inch to 6-foot Caucasian male wearing mirrored aviator sunglasses approached a teller at another branch of the same bank, shortly after opening, and demanded cash bills consisting of twenty, fifty, and one hundred dollar bills. The man wore a long-sleeved maroon windbreaker jacket, a maroon handkerchief-type mask that he snapped over his mouth and nose, and a black baseball-style hat covering his ears. He explicitly told the teller to retrieve money from two specific tills, and the man did not want any die packs or "bait." At no time did he display a firearm or threaten to use a firearm. After receiving the money, he left on foot. Contrary to the robber's demand, the teller provided the man with bait money and one bill affixed with a tracking device.

The tracking device sent out a tone alert to law enforcement, leading officers to an intersection where the bill, affixed with the tracking device, lay in the middle of the street. Officers then contacted a nearby HVAC business which had outside video cameras recording the street where the bill was located. The HVAC video contained footage of a Caucasian man in a green compact sedan with a lime-green bumper sticker centered on the trunk. The driver, who appeared to have no facial hair and closely cropped hair, dropped something out of the driver's side window. The driver's jacket and bandana matched the description of the April 2015 robber. The investigating officer determined the vehicle was a 1997 or 1998 Chevy Malibu with customized wheels and out-of-state plates. Additionally, the investigating officer also noticed, after reviewing internal surveillance videos from the bank, a small, yet visible, raised bump the size of a pencil eraser on the back side of the robber's left hand, located between the third finger and the wrist.

In July 2015, a Caucasian male, between 5 foot 8 inches and 6 foot, entered the same bank, just after opening, as that in the 2012 robbery. The man wore a yellow long-sleeved jacket, a yellow handkerchief mask, a dark-billed hat, and mirrored aviator sunglasses. He demanded twenty, fifty, and one hundred dollar bills from two particular drawers and specifically asked for no trackers or die packs. As the teller pulled money from the drawers, the robber noticed a tracking device on one of the twenty dollar bills. After the man grabbed the bill and felt the tracking device inside, he lifted his shirt and pointed to a gun in his waistband.

After investigation, which included the internal surveillance videos from the banks, the investigating officer suspected, due to noteworthy similarities, that the same individual committed all three robberies. Based on the HVAC video footage from the April 2015 robbery and still shots of the suspect from the banks' video footage during the three robberies, the investigating officer issued a bulletin to news and local police departments requesting any information on the suspect. That same day, a detective notified the investigating officer that a vehicle matching that described in the bulletin was parked at a nearby hotel. The detective took and sent pictures of the vehicle to confirm. The investigating officer requested that the

detective, who was in plain clothes and an unmarked car, remain with the vehicle. The vehicle was a green, 1999 Chevy Malibu with wheels consistent with the images from the April 2015 HVAC footage. On the trunk there was a section of a bumper sticker which matched the same shape and size of the bumper sticker from the April 2015 footage. In addition, there was an adhesive residue with a greenish tint which was also consistent with the lime-green bumper sticker location seen in the April HVAC 2015 footage. The license plate also matched the April 2015 footage; a white and blue out-of-state license plate. Additionally, the rims on the wheels matched those depicted in the April 2015 HVAC photographs. Another detective confirmed with the hotel's manager that according to the hotel's records, the vehicle was registered in Williams' name and that Williams had been residing at the hotel in the same room for two weeks. Hotel staff also confirmed that Williams was the only occupant of the room.

The vehicle's license number was run through the Washington Bureau of Licensing. The report confirmed Williams was the sole registered owner and had been since prior to the April 2015 robbery. The investigating officer also confirmed Williams' date of birth, height, and Washington address. Williams' DMV photograph, received by the investigating officer, revealed an upturned nose and closely cropped hair, consistent with the photograph and description of the suspect from the 2012 robbery. Moreover, another detective indicated that he believed, after observing Williams entering and leaving the room registered to Williams, that Williams was the same individual on the bulletin.

In order to determine whether Williams had an identifying bump on the back of his left hand, matching that of the suspected robber, an officer dressed as a tow truck operator stood near a tow truck as it backed up to Williams' sedan. Williams exited his room and approached the tow truck. When the officer showed Williams his badge, Williams turned away and refused to speak.

Law enforcement then placed Williams in handcuffs. The investigating officer confirmed that Williams' nose was similar to the description given by the witness in the 2012 robbery. Then, the investigating officer rolled Williams' left hand to the side and observed a visible bump, consistent with the one seen in the bank surveillance video. The investigating officer, believing that Williams was very likely the suspect wanted for the robberies, had a patrol car dispatched to the scene, and law enforcement placed Williams inside. The investigating officer testified that at this point he placed Williams under arrest.

After peering through Williams' hotel room window and noticing two backpacks, the investigating officer applied for a search warrant for the vehicle and hotel room. In his affidavit, the investigating officer set out his investigation, including a description of the similarities between the three robberies and his corroborations regarding the vehicle; Williams' unique nose; and the similar bump on his left hand. Additionally, the investigating officer noted he had eighteen years of experience as a police officer in Idaho, serving as a detective for the violent crimes robbery unit for the last eight of those years. He also included photos from his investigation, including still shots from each of the three bank robberies; photos of the vehicle (both from the HVAC video and from the hotel parking lot); and

3

Williams' DMV photo. A search warrant was issued for Williams' hotel room and the vehicle.

During the search of a backpack inside the hotel room, the investigating officer found a green lightweight coat with a green piece of sewn triangular cloth, sewing needles, a handgun, and magazines. Inside the vehicle, the investigating officer found a blue and green coat with a blue and green acid washed cloth and several large mirrored "aviator" sunglasses in the jacket's center pocket.

Police also found nearly $7,000, with some of the bills bearing sequential serial numbers. Williams was indicted for one count of robbery and one count of a felon in possession of a firearm. Williams pled not guilty. Four months later, the State indicted Williams for an additional count of robbery with a firearm enhancement.

. . . .

A jury found Williams guilty of two counts of robbery, one count of a firearm enhancement, and one count of a felon in possession of a firearm.

*Williams*, 163 Idaho at 290-292, 411 P.3d at 1191-1193. Williams appealed, and the judgment of conviction was affirmed. *Id*. at 305, 411 P.3d at 1206.

Williams then filed a 100-page, pro se petition for post-conviction relief, raising multiple claims of ineffective assistance of trial counsel, ineffective assistance of appellate counsel, and stand-alone constitutional claims. Williams moved for, and was appointed, counsel. Williams also moved to disqualify the district court judge from hearing the post-conviction petition case; the motion was denied. After a substitution of counsel, post-conviction counsel moved for an extension of time to file an amended petition for post-conviction relief. Williams moved to dismiss the substituted counsel and appoint different counsel based on what Williams perceived to be post-conviction counsel's unwillingness to do his bidding, such as following up on the motion to disqualify the district court judge and communicate with Williams in the method he dictated.

The basis for the motion to extend the time to file an amended petition was, in part, because Williams would not meet with counsel in-person until counsel complied with Williams' directives regarding communication. Williams filed a response to the request for an extension, explaining that he told his counsel there would be no in-person meetings until counsel responded to Williams' letters and because counsel had not responded to the letters, new counsel needed to be assigned. The district court granted the motion for an extension of time, but did not appoint different post-conviction counsel.

Counsel prepared an amended petition for post-conviction relief. However, when counsel took a copy of the amended petition to Williams to review, Williams refused to attend the visit. Counsel was taken to Williams' cell where counsel slipped a copy of the amended petition under

4

Williams' jail cell door; the petition was immediately slid back out, unread, and unsigned. Consequently, the amended petition could not be filed because it was not attested to by Williams. Williams then filed a pro se motion to allow an amended petition. Williams explained he refused to sign the amended petition because counsel "has been told in writing many times certain steps must be taken before Williams could visit [with appointed counsel]." Williams made clear that if counsel attempted to visit him without meeting Williams' prior demands, any visit would be refused. Ultimately, no amended petition was filed.

The State filed an answer and a motion to summarily dismiss the petition. The district court found the State's motion insufficient. The court issued a notice of intent to dismiss Williams' petition for post-conviction relief. Williams' counsel filed a response, noting the district court's notice of intent to dismiss did not address all the claims in the petition, and otherwise responded to the district court's notice. The district court found that, in light of the record, the petition, the court's notice of intent to dismiss, and Williams' response, there was no genuine issue of material fact on any claim addressed by the court in its initial notice of intent to dismiss and summarily dismissed those claims. However, the court noted that counsel's response identified several claims in the petition that the court had not addressed in the initial notice and, thus, the court did not summarily dismiss those claims. Instead, the court issued a notice of intent to dismiss those claims and gave Williams an opportunity to respond to the second notice of intent to dismiss. No response was filed regarding the claims in the second notice of intent to dismiss, and the court summarily dismissed the claims. Williams appealed from the order summarily dismissing his petition for post-conviction relief (Docket No. 48467).

While the appeal was pending, Williams filed a motion to appoint counsel and an I.R.C.P. 60(b)(6) motion. The district court did not rule on the motion to appoint counsel and denied the I.R.C.P. 60(b)(6) motion. Williams appealed from the denial (Docket No. 49549), and the appeals were consolidated.

## II.

## STANDARD OF REVIEW

A petition for post-conviction relief initiates a proceeding that is civil in nature. I.C. § 19-4907; *Rhoades v. State*, 148 Idaho 247, 249, 220 P.3d 1066, 1068 (2009); *State v. Bearshield*, 104 Idaho 676, 678, 662 P.2d 548, 550 (1983); *Murray v. State*, 121 Idaho 918, 921, 828 P.2d 1323, 1326 (Ct. App. 1992). Like a plaintiff in a civil action, the petitioner must prove by a

preponderance of evidence the allegations upon which the request for post-conviction relief is based. *Goodwin v. State*, 138 Idaho 269, 271, 61 P.3d 626, 628 (Ct. App. 2002). A petition for post-conviction relief differs from a complaint in an ordinary civil action. *Dunlap v. State*, 141 Idaho 50, 56, 106 P.3d 376, 382 (2004). A petition must contain much more than a short and plain statement of the claim that would suffice for a complaint under I.R.C.P. 8(a)(1). Rather, a petition for post-conviction relief must be verified with respect to facts within the personal knowledge of the petitioner, and affidavits, records, or other evidence supporting its allegations must be attached or the petition must state why such supporting evidence is not included with the petition. I.C. § 19-4903. In other words, the petition must present or be accompanied by admissible evidence supporting its allegations or the petition will be subject to dismissal. *Wolf v. State*, 152 Idaho 64, 67, 266 P.3d 1169, 1172 (Ct. App. 2011).

Idaho Code Section 19-4906 authorizes summary dismissal of a petition for post-conviction relief, either pursuant to a motion by a party or upon the court's own initiative, if it appears from the pleadings, depositions, answers to interrogatories, and admissions and agreements of fact, together with any affidavits submitted, that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. When considering summary dismissal, the district court must construe disputed facts in the petitioner's favor, but the court is not required to accept either the petitioner's mere conclusory allegations, unsupported by admissible evidence, or the petitioner's conclusions of law. *Roman v. State*, 125 Idaho 644, 647, 873 P.2d 898, 901 (Ct. App. 1994); *Baruth v. Gardner*, 110 Idaho 156, 159, 715 P.2d 369, 372 (Ct. App. 1986). Moreover, the district court, as the trier of fact, is not constrained to draw inferences in favor of the party opposing the motion for summary disposition; rather, the district court is free to arrive at the most probable inferences to be drawn from uncontroverted evidence. *Hayes v. State*, 146 Idaho 353, 355, 195 P.3d 712, 714 (Ct. App. 2008). Such inferences will not be disturbed on appeal if the uncontroverted evidence is sufficient to justify them. *Id.*

If a district court determines claims alleged in a petition do not entitle a petitioner to relief, the district court must provide notice of its intent to dismiss and allow the petitioner twenty days to respond with additional facts to support his or her claims. I.C. § 19-4906(b); *Crabtree v. State*, 144 Idaho 489, 494, 163 P.3d 1201, 1206 (Ct. App. 2006). The district court's notice should provide sufficient information regarding the basis for its ruling so as to enable the petitioner to

6

supplement the petition with the necessary additional facts, if they exist. *Newman v. State*, 140 Idaho 491, 493, 95 P.3d 642, 644 (Ct. App. 2004).

### III.

### ANALYSIS

Williams challenges the summary dismissal of numerous claims. First, Williams contends the district court erred in summarily dismissing the claims alleging his trial attorney was ineffective because he: (1) failed to file a *Franks v. Delaware*, 438 U.S. 154 (1978) motion challenging the statements in the search warrant; (2) failed to move to suppress photographic evidence under *Napue v. Illinois*, 360 U.S. 264 (1959); (3) failed to adequately voir dire the venire; (4) failed to effectively cross-examine and impeach state witnesses and object to various evidence or testimony about the sewing needles, photographs of his hand, and video evidence; (5) failed to introduce exculpatory evidence; (6) failed to call defense witnesses; (7) deprived Williams of his right to testify in his defense; (8) reneged on a promise to jurors that Williams would testify; and (9) failed to provide an adequate closing argument.[1] Williams claims that the cumulative effect of trial counsel's deficient performance was prejudicial. Williams further claims that appellate counsel also rendered ineffective assistance of counsel. Williams also raises an independent claim that the district court erred by depriving Williams of his Fifth Amendment right to testify in his defense. Finally, Williams alleges the district court erred by refusing to rule on Williams' pro se motion for court-appointed counsel to pursue an I.R.C.P. 60(b)(6) motion before denying the motion and the district court erred in denying the motion.

Williams acknowledges that, for several of his claims, his petition cited "evidence" that he did not attach to his petition or otherwise submit to the district court for consideration. These claims include Claim 1 (failure to file a *Franks* motion); Claim 2 (failure to file a suppression motion under *Napue*, except for the allegations related to Exhibits 79 and 80); Claim 4 (failure to effectively cross-examine, impeach, and make objections); Claim 5 (failure to introduce exculpatory evidence); and Claim 6 (failure to call defense witnesses). Specifically, for Claim 1, Williams' petition cited a police report and "Photo 69" as evidence that the search warrant affidavit included falsities that should have been challenged in a *Franks* hearing. However, Williams did not provide either the police report or "Photo 69" with his petition and did not request judicial

---

[1] For convenience, we have numbered the ineffective assistance of counsel claims at issue on appeal sequentially rather than how they are numbered in Williams' petition.

notice of them to the extent either were included in the underlying criminal record. For Claim 2, Williams' petition alleged the existence of several photos he contended were taken after his hand was manipulated to show a bump identified in one of the robbery surveillance videos and observed by law enforcement when Williams was arrested. However, Williams did not attach the photos to his petition nor were they included in the photographs judicially noticed by the district court. In any event, the district court considered the merits of this claim based on the two photos that were judicially noticed (Exhibits 79 and 80). For Claim 4, Williams' allegations relied on photos and videos that were also not attached to his petition or judicially noticed. Claim 5, like Claim 1, relied on "Photo 69" and information from a police report which were not attached to the petition or provided to the district court. Finally, for Claim 6, in which Williams alleged trial counsel was ineffective for failing to call two photo technicians to testify that Williams' hand was manipulated in order to obtain a photograph of his hand with a bump, Williams did not support the allegation with affidavits or declarations from either witness.

The foregoing evidentiary deficiencies were among the reasons the district court summarily dismissed these claims. On appeal, Williams argues, in part, that it was ineffective assistance of post-conviction counsel not to attach the evidence to Williams' pro se petition or to the "proposed Amended Petition."[2] Williams' argument ignores that post-conviction counsel could not attach something to the pro se petition Williams filed before counsel was appointed. Williams' argument also fails to explain what attaching anything to a "proposed Amended Petition" would accomplish in terms of providing evidentiary support for Williams' claims since Williams refused to verify an amended petition. In any event, Williams failed to allege a genuine issue of material fact on any of these claims that would entitle him to an evidentiary hearing, not only because he failed to attach the evidence cited in his petition, but for a variety of reasons described by the district court. To the extent these other reasons are unchallenged by Williams, we affirm the district court on those

---

[2] Williams' assertion that post-conviction counsel was ineffective in relation to various claims is for the stated purpose of having a federal court review those claims pursuant to *Martinez v. Ryan*, 566 U.S. 1 (2013). Williams states that he "points out these deficiencies because he is required to by *Shinn v. Ramirez*, ___ U.S. ___, 142 S.Ct. 1718, 1739 (2022)." Whatever traction Williams will get in federal court by doing so remains to be seen. But, nothing in our opinion should be construed as endorsing Williams' conclusory allegations that post-conviction counsel was ineffective, particularly given Williams' refusal to interact with post-conviction counsel and his ongoing efforts to demand counsel, threaten counsel to act as he dictates, and seek new counsel when he was inevitably dissatisfied with counsel's refusal to do his bidding.

bases. *See Rodriquez v. State*, 171 Idaho 634, 642, 524 P.3d 913, 931 (2023) ("[W]hen a lower court makes a decision on alternative grounds and one or more of those grounds are not challenged on appeal, we will affirm."). We also affirm the district court's conclusion that Williams failed to allege a genuine issue of material fact that counsel was deficient in any of the ways alleged in Claims 1, 2 (also as further discussed below), 4, 5, or 6, as well as the district court's conclusion that Williams failed to allege a genuine issue of material fact as to prejudice in relation to these claims.

As to the claim that appellate counsel was ineffective, Williams concedes this issue was waived by post-conviction counsel. We decline to review a claim waived in the district court. Consequently, the remaining summarily dismissed claims alleging ineffective assistance of trial counsel before this Court for review are: Claim 2--trial counsel failed to move to suppress Exhibits 79 and 80 under *Napue*; Claim 3--trial counsel failed to adequately voir dire the venire; Claim 7--trial counsel deprived Williams of his right to testify in his defense; Claim 8--trial counsel reneged on a promise to jurors that Williams would testify; and Claim 9--trial counsel failed to provide an adequate closing argument.

## A.      Ineffective Assistance of Counsel

A claim of ineffective assistance of counsel may properly be brought under the Uniform Post-Conviction Procedure Act. *Barcella v. State*, 148 Idaho 469, 477, 224 P.3d 536, 544 (Ct. App. 2009). To prevail on an ineffective assistance of counsel claim, the petitioner must show that the attorney's performance was deficient and that the petitioner was prejudiced by the deficiency. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Self v. State*, 145 Idaho 578, 580, 181 P.3d 504, 506 (Ct. App. 2007). To establish a deficiency, the petitioner has the burden of showing that the attorney's representation fell below an objective standard of reasonableness. *Aragon v. State*, 114 Idaho 758, 760, 760 P.2d 1174, 1176 (1988); *Knutsen v. State*, 144 Idaho 433, 442, 163 P.3d 222, 231 (Ct. App. 2007). To establish prejudice, the petitioner must show a reasonable probability that, but for the attorney's deficient performance, the outcome of the trial would have been different. *Aragon*, 114 Idaho at 761, 760 P.2d at 1177; *Knutsen*, 144 Idaho at 442, 163 P.3d at 231. This Court has long adhered to the proposition that tactical or strategic decisions of trial counsel will not be second-guessed on appeal unless those decisions are based on inadequate preparation, ignorance of relevant law, or other shortcomings capable of objective evaluation. *Gonzales v. State*, 151 Idaho 168, 172, 254 P.3d 69, 73 (Ct. App. 2011). "An error by

counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691.

1.      **Failed to Move to Suppress Exhibits 79 and 80**

In his post-conviction petition, Williams alleged that all photographs taken of his left hand on September 1 should have been suppressed because he does not naturally have a bump or raised area on his hand; the bump or raised area was caused by law enforcement manipulating his hand. Law enforcement took several photographs of Williams' left hand on September 1, approximately ten days after Williams' arrest. Two of the photographs--Exhibits 79 and 80--were admitted at trial. The photographs depict a raised area or bump on Williams' left hand, which was consistent with testimony provided by the bank teller and video footage from the bank. In his petition, Williams contends he has no such distinguishing feature on his left hand and that in order to achieve the "raised area," a detective "began squeezing Williams' wrist and pushing the cuff against Williams' arm, while instructing Williams to pump his fist. Finally, a vein appeared on the back of Williams' hand and was photographed in several positions."

Williams did not attach the September 1 photographs to his petition. However, the district court took judicial notice of parts of the underlying criminal case, including the exhibits, and noted that only Exhibits 79 and 80 were admitted at trial. As to all other photographs taken on September 1, the district court concluded they could not be prejudicial because they were not admitted at trial and, thus, Williams failed to establish a claim of ineffective assistance of counsel. However, because Exhibits 79 and 80 were admitted at trial, the district court reviewed the claim as it related to those exhibits.

In its first notice of intent to dismiss, the district court concluded a motion to suppress would not have been successful because Williams was not competent to testify as an expert regarding the causal link between the detective's actions and the resulting bump on his hand and because Williams failed to articulate a legal basis for a motion to suppress. The district court further concluded that even if it determined the detective lied about manipulating Williams' hand, the result would not have been the exclusion of the photographs but would simply have provided a topic on which the detective's credibility could be impeached on cross-examination.

In its second notice of intent to dismiss, the district court noted that Williams could assert that he did not have a bump on his hand prior to the manipulation by the detective and did have a bump on his hand after the alleged manipulation but could not testify to causation as a lay witness.

10

The district court also reiterated that the photographs would not have been excluded, but would only be a basis for impeachment. Thus, the district court concluded that Williams failed to establish a genuine issue of material fact on either prong of *Strickland*.

On appeal, Williams argues the district court erred in finding he did not allege a genuine issue of material fact as to deficient performance and prejudice. First, Williams alleges the district court erred in finding a motion to suppress Exhibits 79 and 80 would not have been successful in the trial court because "Williams did not need to explain how or why the police manipulation caused the bump on his hand, he only needed to testify that is what happened. He observed what happened; why it happened is not necessary to explain." However, the district court explicitly held that "Williams could testify as to what happened," but could not "explain how or why the manipulation caused the bump on his hand." Thus, what Williams challenges as factual error was explicitly permitted by the district court and, as a result, Williams' fails to show error in the district court's reasoning. Additionally, the district court's decision can be affirmed on the ground that Williams failed to articulate a legitimate legal basis to suppress the photographs.

Williams relies on *Napue* as the legal basis for his claim that his trial counsel rendered deficient performance for failing to file a motion to suppress Exhibits 79 and 80. Specifically, he argues that had trial counsel moved to suppress the evidence pursuant to *Napue*, the prosecutor would have become aware the evidence was false and the trial court would have barred the State from presenting the false evidence at trial. Where the alleged deficiency is counsel's failure to file a motion, a conclusion that the motion, if pursued, would not have been granted by the trial court, is generally determinative of both deficient performance and prejudice under the *Strickland* test. *Lint v. State*, 145 Idaho 472, 477-78, 180 P.3d 511, 516-17 (Ct. App. 2008). A *Napue* claim requires a defendant to show that "(1) the testimony was false; (2) the prosecutor should have known it was false; and (3) the testimony was material." *State v. Lankford*, 162 Idaho 477, 503, 399 P.3d 804, 830 (2017) (quoting *State v. Wheeler*, 149 Idaho 364, 368, 233 P.3d 1286, 1290 (Ct. App. 2010)).

Williams has failed to establish the first step in a *Napue* analysis--that the photographs were "indisputably false." *U.S. v. Lochmondy*, 890 F.2d 817, 823 (1989) (noting that where defendant alleges statement is false, defendant must show statement was indisputably false). Williams does not challenge that the photographs are of his left hand or that the photographs accurately depict his hand at the time they were taken. Williams instead alleges the officers

11

manipulated his hand to cause the bump; the officers testified differently. At best, Williams alleged a conflicting version of the circumstances causing the bump on his left hand at the time the photographs were taken. Where there is conflicting evidence, "[i]t is within the province of the jury to assign weight to conflicting evidence and credibility to testimony." *State v. Tryon*, 164 Idaho 254, 258, 429 P.3d 142, 146 (2018) (quoting *State v. Anderson*, 145 Idaho 99, 104, 175 P.3d 788, 793 (2008)). Because Williams did not establish the statements were "indisputably false," he cannot establish even the first step of a *Napue* claim; thus, the district court correctly concluded Williams failed to allege a genuine issue of material fact as to deficient performance.

Second, as to the legal basis of the motion, Williams does not argue the evidence was obtained in violation of the Fourth Amendment, but rather, he argues it was obtained in violation of the due process clause of the Fourteenth Amendment. Williams cites no authority that the remedy provided by the retrospective *Napue* analysis would apply prospectively as a basis to suppress evidence that was not obtained in violation of the Fourth Amendment. A party waives an issue on appeal if either argument or authority is lacking. *Powell v. Sellers*, 130 Idaho 122, 128, 937 P.2d 434, 440 (Ct. App. 1997). Thus, the district court did not err in finding Williams failed to allege a genuine issue of material fact regarding deficient performance.

To establish a claim of ineffective assistance of counsel, he must establish prejudice for his claim, i.e., that there is a reasonable probability that the outcome of the trial would have been different. *Dunlap*, 159 Idaho at 321, 360 P.3d at 330. The district court held that Williams failed to allege a genuine issue of material fact that the outcome would have been different. On appeal, Williams asserts that was error because, without the photographs, the only remaining evidence would have been the detectives' testimony describing Williams' left hand.

Contrary to Williams' assertion, the district court identified the other evidence that linked Williams to the crimes. The district court found that evidence included the detectives' testimony regarding: the appearance of Williams' left hand and that Williams matched the physical description of the robber; his clothing and sunglasses matched the description of the robber's apparel; his car matched the description of the car seen in the video, including the color, model, year, placement of a bumper sticker, wheels, and color of the out-of-state license plate; he possessed thousands of dollars in hundred dollar bills, some of which were sequentially marked; and he possessed a gun of the same general type as used in the most recent robbery. Thus, in light of all the evidence linking Williams to the crimes, even if the photographs had been excluded, he

12

failed to establish a reasonable likelihood that he would have been acquitted of the crimes. As such, the district court did not err in concluding Williams failed to allege a genuine issue of material fact regarding either prong of the *Strickland* analysis or in summarily dismissing this claim.

### 2. Failed to Adequately Voir Dire the Venire

In his post-conviction petition, Williams claimed his trial counsel rendered deficient performance because he did not ask venire members questions designed to discover which members would be receptive to Williams' contention that the officers planted the evidence found in the hotel room. The State argued trial counsel asked questions designed to discover bias, which was part of the trial strategy and, therefore, was not objectively unreasonable. The district court found that trial counsel questioned jurors about whether anyone had negative encounters with police; whether the venire could be critical of an officer's testimony and evaluate an officer's testimony the same as a lay person's testimony; and whether anyone had been falsely accused by law enforcement. The district court also found that Williams presented no evidence that additional, more direct questioning would have revealed a bias on the part of any prospective juror. The district court summarily dismissed this claim, finding the claims were contrary to the record, Williams failed to demonstrate trial counsel's questioning of the venire was objectively unreasonable, and Williams failed to demonstrate prejudice.

On appeal, Williams argues he raised a genuine issue of material fact that trial counsel was ineffective for failing to adequately voir dire the venire. Preliminarily, we note that, as to this claim, and the claims addressed in sections III.A.3 and 5, Williams failed to allege error as to the district court's finding regarding the prejudice prong of the *Strickland* analysis. Instead, Williams argues this Court should aggregate any findings of deficient performance and determine whether the deficient performance cumulatively prejudiced Williams. This Court declines to deviate from the *Strickland* standard which requires a finding of deficient performance *and* prejudice on *each* claim. *Strickland*, 466 U.S. at 687-88. Because Williams fails to challenge the district court's findings regarding the prejudice prong on this claim, he has waived any claim of error on appeal and the district court is affirmed on the unchallenged basis. *See Rodriquez*, 171 Idaho at 642, 524 P.3d at 931. However, because he raises a cumulative error argument, we will address whether Williams alleged a genuine issue of material fact as to deficient performance on his claims.

13

Trial counsel's performance in voir dire is assessed by examining the objective reasonableness of counsel's actions at the time of voir dire. *Dunlap*, 159 Idaho at 321, 360 P.3d at 330. This is because "[f]ew decisions at trial are as subjective or prone to individual attorney strategy as juror voir dire, where decisions are often made on the basis of intangible factors." *Id.* (quoting *Miller v. Francis*, 269 F.3d 609, 620 (6th Cir. 2001)).

On appeal, Williams argues that his trial counsel's voir dire was objectively unreasonable because counsel knew that Williams' theory of defense was that officers both falsified and planted the evidence against him, but counsel failed to ask the venire whether it would be able to consider such a defense. Williams alleges that trial counsel should have more thoroughly questioned the jurors to determine whether the jurors would be able to conclude the police falsified and planted evidence. For example, Williams argues trial counsel should have asked the venire if "they really believe a sworn officer of the law would lie under oath." The State argues the district court correctly concluded trial counsel's strategy was not unreasonable.

Trial counsel's questioning during voir dire, taken as a whole, demonstrates a reasonable strategy that was designed to identify individuals who may have a bias in favor of law enforcement or who might have believed officers always testify truthfully because they are law enforcement officers. In context, trial counsel's voir dire questions asked the potential jurors if they would treat an officer's testimony the same as a lay person's testimony, which includes testifying truthfully under oath; consequently, the voir dire was sufficient to discover any bias. Failing to specifically inquire whether members of the venire might believe Williams' testimony that the evidence was manipulated or planted or explicitly ask whether a law enforcement officer would commit perjury does not render trial counsel's voir dire strategy objectively unreasonable.

Williams also argues on appeal that trial counsel "told the jury that officers don't lie." In support of that claim, Williams relies on the following statement by trial counsel during voir dire:

> I appreciate that answer because I think a lot of people think that defense attorneys come in here and say cops are lying, never tell the truth. They're witnesses just like anybody else and they are going to tell you what they saw or heard and their memory and sight is subject to sort of the same issues.

We do not read this portion of the transcript as Williams does. Trial counsel did not say that officers never lie; instead, trial counsel attempted to alleviate a stereotype of defense attorneys while also educating the venire that law enforcement witnesses should be evaluated similar to other witnesses. Without the factual support for his argument, the argument fails. The district court

14

correctly concluded Williams failed to establish a genuine issue of material fact that trial counsel's voir dire was objectively unreasonable and, thus, constituted deficient performance.

### 3. Deprived Williams of His Right to Testify in His Defense

In his post-conviction petition, Williams alleged that trial counsel deprived him of his right to testify. On appeal, Williams acknowledges that trial counsel did not affirmatively prevent him from testifying but nonetheless argues that trial counsel's deficient performance deprived him of his Fifth Amendment right to testify at trial because it put Williams:

> in the position of having to present his theory that the evidence was planted by the police by himself, during his cross-examination by the state. This would look to the jury as a last-minute act of desperation by Mr. Williams, done without the consent or knowledge of his attorneys, and would have been a disaster.

The State argues Williams fails to show his attorney prevented Williams from testifying because Williams knowingly, intelligently, and voluntarily waived his right to testify. The district court concluded that Williams failed to establish a genuine issue of material fact of any deficient performance or prejudice because Williams freely, voluntarily, and intelligently waived his right to testify.

An argument that a defendant was denied the right to testify may be brought in post-conviction proceedings as a constitutional issue, as a claim based on ineffective assistance of counsel, or both.[3] *Cootz v. State*, 129 Idaho 360, 368-70, 924 P.2d 622, 630-32 (Ct. App. 1996). Every criminal defendant has a fundamental right to testify on his or her own behalf. *Rock v. Arkansas*, 483 U.S. 44, 49 (1987). However, like other constitutional rights, the right to testify can be waived. When the claim is raised as an ineffective assistance of counsel claim, the *Strickland* standard applies. Thus, Williams must allege a genuine issue of material fact that his trial counsel deprived him of his right to testify and had counsel not done so, the outcome of the trial would have been different.

First, because Williams concedes that trial counsel did not prevent him from testifying, he necessarily fails to establish deficient performance and his claim fails. Second, Williams waived his right to testify, thereby failing to establish both deficient performance and prejudice. Because the right to testify on one's own behalf in a criminal case can be waived, the first inquiry is whether

---

[3] In this case, Williams raises the right to testify claim both as a claim of ineffective assistance of counsel and as an independent constitutional claim.

the defendant knew that the ultimate decision of whether to testify was his to make. *See Cootz*, 129 Idaho at 369, 924 P.2d at 631. If so, the appellate court must then determine whether the defendant waived his right to testify and whether that waiver was knowingly, intelligently, and voluntarily made. *Id.* When determining whether a defendant has waived a constitutional right, we accept the trial court's findings of fact if supported by substantial evidence; however, we freely review the court's application of constitutional requirements to the facts found. *See State v. Hiassen*, 110 Idaho 608, 611, 716 P.2d 1380, 1383 (Ct. App. 1986).

The district court reviewed and cited the portion of the trial transcript where Williams waived his Fifth Amendment right to testify. The district court concluded that Williams' claim was belied by the record and, alternatively, Williams' decision not to testify was a knowing, intelligent, and voluntary waiver of that right.

During trial, at the close of the State's case-in-chief, Williams' trial counsel planned for Williams to testify in the defense's case-in-chief. However, when it came time for Williams to testify, he decided not to because he was dissatisfied with trial counsel's strategic decisions. The trial court then engaged in the following colloquy with Williams:

Court:          Mr. Williams, you do have a right to remain silent and not be compelled to testify. You also have a right to waive that right to remain silent and you can choose to testify in your own defense if you choose to.

[Trial counsel] has indicated to me that's what the idea was going into this case. Have you made a decision about whether or not you want to testify?

Williams:          At this point, your Honor, I'm going to remain silent.

Court:          All right. I'll take from your silence then that you do not wish to testify. It is apparent to the court that Mr. Williams is an intelligent man, that he is fully aware of what is going on in his case. He may not understand the legal complexities or even perhaps agree with the strategy or understand what taking one tact might do in terms of opening doors.

But I think he's an intelligent man, I think he is clear headed, I think that he is making a decision by his election to remain silent, even in the inquiry about whether or not he wants to testify or not, that he is choosing not to testify.

If he wanted to testify, I would obviously let him. I would even give counsel and the defendant some time this morning to prepare, if that is what he wanted to do. But it doesn't sound like that's what he wants to do.

And so I will find the defendant has freely, voluntarily and intelligently elected to remain silent and not testify.

16

The trial court then finalized jury instructions, and before bringing the jury back, stated:

Court:     Before we get going, I completed jury instruction[s], I wanted to address one more time with Mr. Williams to make sure he still wants to stick with the decisions he's made thus far relative to his attire and proceeding with not testifying?

        Mr. Williams is not wishing to respond to me, I take it, from his silence.

        I wanted to make sure Mr. Williams, you understand a couple of things. First of all, this is obviously a very serious and important matter. You face the potential for up to a fixed life sentence in this matter. The fact that you have made these decisions today, I want you to understand that these are your decisions that you've made and you have to live with those consequences, and even if they have resulted in error, it is a good possibility or probability that an appellate court will conclude this was invited error by you, that you created this error and therefore it is not a basis for reversal. I want you to understand that as well.

Williams:    (Indicates by nodding head up and down).

Court:     I want you to understand too that I understand you didn't get a chance to work with counsel last night to prepare to testify, that if you wanted to testify, I would send the jury out and have them come back after noon and we would start then, if you wanted to spend some time getting ready, as I indicated earlier. I'm happy to do that as well. So I want to make sure that you are satisfied with these decisions. This is your opportunity to speak up.

Williams:    (No audible response).

Court:     He doesn't wish to speak up.

Based on the above, the district court concluded that the record of the trial belied Williams' claim that he did not knowingly, voluntarily, and intelligently waive his right to testify.

On appeal, Williams argues his statement, "I'm going to remain silent," does not establish his waiver was intelligently made because it does not establish that he understood he had the right to testify, the decision was his alone, or that he was not advised he had a right to testify in narrative form[4] and thus not be limited to the questions put to him by trial counsel. The district court found that Williams knew and understood he had a right to testify; first, because the trial strategy until that point had been for Williams to testify and Williams had intended to testify; and second, because the trial court told Williams he could either remain silent or he could testify. The trial

---

[4]  Williams provides no authority for the proposition that he had the right to testify in narrative form, as opposed to answering questions put to him, such that failing to inform him of that "right" renders his waiver involuntary.

court found that Williams was very involved in his case and had the intellectual capacity to make an informed choice whether or not to testify. The trial court explicitly told Williams he had the right to testify, and it was clear the decision whether to testify was Williams' decision alone because the district court directed his questions to Williams.

Nonetheless, Williams argues that even if he chose not to testify, he did so only because he was forced to choose between two undesirable outcomes; however, Williams does not explain how this would render his waiver constitutionally deficient or how his attorney rendered deficient performance. Regardless, this Court has previously held the fact that a defendant faced with a choice between two alternatives, neither of which are to his liking, does not make the chosen alternative constitutionally involuntary. *State v. Jakoski*, 132 Idaho 67, 68, 966 P.2d 663, 664 (Ct. App. 1998) (holding that defendant having to choose between probation and prison was not constitutionally involuntary choice). The district court did not err in finding that Williams' waiver of his right to testify was knowing, intelligent, and voluntary, and thus, Williams failed to allege a genuine issue of material fact for either prong of his ineffective assistance of counsel claim.[5]

### 4. Reneged on Promise to Jurors That Williams Would Testify

In Williams' petition for post-conviction relief, he alleged that, although it was the trial strategy to have Williams testify, that changed approximately one week before trial when trial counsel indicated he was not going to pursue Williams' desired theory of defense. Williams claimed that while visiting with counsel and co-counsel, counsel walked away from the conversation, leaving Williams with trial co-counsel. According to Williams, "[trial counsel] told me he couldn't stay, and that he would be leaving and would not be seeing me again before trial. He then explained that [co-counsel] would prepare and conduct my direct examination." In his petition, Williams further asserted that at the time of the meeting, he "personally anticipated testifying that evidence was planted."

---

[5]     As noted, Williams waived his challenge to the district court's finding regarding prejudice by claiming only cumulative prejudice. Even if he had not, Williams failed to allege a genuine issue of material fact as to prejudice on his claim that counsel was ineffective for depriving him of his right to testify because Williams failed to include an offer of proof as to what his proposed testimony would have been. Assuming Williams' testimony would follow either trial counsel's defense strategy or Williams' preferred trial strategy that law enforcement falsified and planted evidence, he failed to allege how that testimony would create substantial doubt as to his guilt.

The district court found Williams' claim was belied by the record; trial counsel reasonably believed Williams would testify until Williams refused to meet with trial counsel on the evening before Williams was scheduled to testify. The next morning, Williams exercised his right not to testify. Based on Williams' decision not to testify, the district court determined that Williams' choice constituted an "unforeseen trial development" and, therefore, did not allege a genuine issue of material fact regarding trial counsel's deficient performance.

On appeal, Williams argues the district court erred in summarily dismissing his claim that trial counsel reneged on a promise to jurors that Williams would testify because he alleged a genuine issue of material fact about whether his trial counsel reasonably believed Williams would testify when counsel made his opening statement. Williams further argues he suffered prejudice because, in essence, the only source of proving Williams' innocence would come from Williams himself since trial counsel presented no other evidence. Williams asserts that when he later declined to testify, this left the jury with the impression that he was guilty and that is why no other evidence was presented. The State argues the district court correctly concluded the record established no genuine issue of fact as to whether Williams would testify.

In some circumstances, promising the jury that a defendant will testify and then failing to have the defendant testify may constitute deficient performance under the *Strickland* standard. *See Saesee v. McDonald*, 725 F.3d 1045, 1050 (9th Cir. 2013). However, the failure to have the defendant testify, even if the jury has been told he will testify, does not constitute deficient performance when the failure to testify is the result of an "unforeseen trial development." *See Foster v. Oregon*, 587 Fed. Appx. 356, 358 (9th Cir. 2014). In *Foster*, trial counsel told the jury that an expert would testify, but by the time the expert was to testify, trial counsel determined the testimony would be detrimental to the case. *Id.* The Ninth Circuit held that the failure to call the expert was not deficient performance because trial counsel was "faced with quite a dilemma-- counsel could break their promise to the jury and risk losing the jury's trust, or counsel could call their expert to the stand anyway and risk detrimental testimony." *Id.* When counsel decided not to call the expert, the Ninth Circuit concluded that counsel's decision not to call the expert, even when he told the jury the expert would testify, was not deficient performance but was, instead, sound trial strategy. *Id.*

During his opening statement, trial counsel told the jury that Williams would testify, would explain certain evidence, and would deny any involvement in the alleged crimes. As found by the

19

district court, trial counsel's statement was based on his reasonable belief that Williams would testify. First, the district court noted that Williams' statements in his post-conviction petition undermined his claim. For example, Williams stated in his petition that trial co-counsel planned to help Williams prepare for his direct examination. To prepare Williams for direct examination indicates that trial counsel intended to have Williams testify and that Williams intended to testify. Second, trial counsel's belief that Williams would testify continued through the State's case-in-chief. For example, on the second day of trial, trial counsel asked the district court to reconsider removal of Williams' leg shackle because Williams felt the shackles prevented his ability to participate completely in trial. Trial counsel then stated:

> [I]f the court is not willing to do that, [Williams] is adamant he feels like he should be out of the leg shackle when *he's up here on the stand*. He is worried about his ability, for instance, to swivel around and use the laser pointer like other witnesses have and those sorts of things.

(Emphasis added.) Later that same day, with Williams present, the issue of whether Williams would testify was addressed by the district court:

> Court:          [Trial counsel], have you made a determination with your client and does your client know whether or not he plans to testify.
> Counsel:        *The plan has been that he is going to testify* and I think [co-counsel] or me are going to meet this evening.

(Emphasis added.) However, the next morning, Williams exercised his right to remain silent.

Williams' claim on appeal that there is a genuine issue of material fact whether trial counsel reasonably believed Williams would testify is belied by the record. Until Williams chose not to meet with counsel the night before his scheduled testimony and then chose not to testify the next morning, the record shows that both trial counsel and Williams believed Williams would testify. Williams' unilateral decision not to testify created an unforeseen trial development because once Williams elected not to testify, trial counsel was prohibited from calling Williams to the stand. Thus, it was Williams, not trial counsel, who precluded Williams' testimony from being presented to the jury. As such, Williams failed to allege a genuine issue of material fact regarding trial counsel's deficient performance during opening statements.

The district court also found Williams did not allege a genuine issue of material fact as to prejudice. Williams argues on appeal that this finding is erroneous because when Williams did not testify, "the jury was left to believe that 'in fact there was no alternate version of the events that took place, and that the inculpatory testimony of the prosecution's witnesses was essentially

20

correct.'" Williams fails to provide any factual basis for his speculative assertion regarding what the jury believed. As such, the district court was not required to accept Williams' assertion and Williams failed to establish a genuine issue of material fact that he was prejudiced. The district court did not err in concluding Williams failed to allege a genuine issue of material fact regarding either prong of the *Strickland* analysis or in summarily dismissing this claim.

### 5. Failed to Provide an Adequate Closing Argument

In his petition, Williams alleged that trial counsel was deficient by conceding during closing argument that Williams possessed a gun when he was arrested. The district court found that any concession made by trial counsel regarding possession of the gun was not deficient performance because "[a]bsent Williams' anticipated testimony, there was no evidence enabling [trial counsel to] do anything other than make the concession." The district court did not address the prejudice prong. Williams makes two arguments on appeal regarding trial counsel's closing argument. First, Williams argues that trial counsel rendered deficient performance when trial counsel acknowledged that although he told the jury that Williams would testify, Williams had decided not to testify. According to Williams, this caused the jury to believe the only reason Williams did not testify is because he would incriminate himself. Second, Williams asserts that trial counsel rendered deficient performance when he told the jury that when Williams' motel room was searched, Williams had a gun in his possession. In doing so, Williams argues that trial counsel essentially stipulated to Williams' guilt in the second phase of the trial on the charge of felon in possession of a firearm.

### a. Statement that Williams would testify

As to Williams' first claim of error, at closing argument in the trial, counsel said:

> There are two bells I need to unring. The first one is that I got up here in this opening a couple days ago and made a promise to you and I said you're going to hear from Kent Williams and he's going to tell you A, B, C and these things about his life. Well, circumstances have changed and obviously, Kent Williams has not testified.
> You have a jury instruction that tells you that Kent Williams, like you, like every citizen of the United States has a privilege against self-incrimination. He can't be compelled to testify against himself. In the same fashion if an officer came up to you and said, hey, can I talk to you a minute and such and such and you can refuse, he's got that right. So that refusal to testify or not testify is not to be part of the calculus in deciding whether Kent is guilty or innocent.

If anybody feels let down by the statement in the opening, that[] is on me, not Kent. That is something that shouldn't be figured in, can't be figured in the analysis.

The jury instruction referenced by trial counsel and provided to the jury reads as follows:

A defendant in a criminal trial has a constitutional right not to be compelled to testify. The decision whether to testify is left to the defendant, acting with the advice and assistance of the defendant's lawyer. You must not draw any inference of guilt from the fact that the defendant does not testify, nor should this fact be discussed by you or enter into your deliberations in any way.

First, trial counsel explained to the jury that Williams' failure to testify was attributable to trial counsel, not Williams. Second, trial counsel did not say that Williams did not testify because he would incriminate himself. Instead, trial counsel's statements referenced what the jury instruction would say about Williams' decision not to testify. Finally, there is no factual support in the record supporting Williams' speculative assertion that "the jury was left to believe that 'in fact there was no alternate version of the events that took place, and that the inculpatory testimony of the prosecution's witnesses was essentially correct.'" Because the record belies Williams' claim and he provides no factual support for his claim, the district court did not err in concluding Williams failed to allege a genuine issue of material fact as to deficient performance regarding trial counsel's statement about Williams' decision not to testify.[6]

### b. Possession of a firearm

Williams next argues on appeal that when trial counsel conceded in closing argument that Williams possessed the firearm and counsel had previously stipulated that Williams had a prior qualifying felony, trial counsel conceded Williams' guilt on the unlawful possession of a firearm charge without his consent, thereby violating his Sixth Amendment right to counsel. As such, Williams argues he was not required to establish prejudice, but instead, prejudice should be presumed. Williams cites to *United States v. Thomas*, 417 F.3d 1053 (9th Cir. 2005); *United States*

---

[6] Even if Williams had preserved a challenge to the district court's prejudice determination with respect to this claim, Williams failed to allege a genuine issue of material fact as to any prejudice, particularly in light of the fact that the jury was instructed that statements of the attorneys, including opening statements and closing arguments, were not evidence and the jury could not consider Williams' decision to remain silent when determining his guilt or innocence. It is presumed the jury follows the instructions given. *State v. Iverson*, 155 Idaho 766, 776, 316 P.3d 682, 692 (Ct. App. 2014). Williams argues he need not establish prejudice but instead, prejudice should be presumed pursuant to *United States v. Cronic*, 446 U.S. 648 (1994) because he was denied his Sixth Amendment right to counsel. We disagree for the reasons explained above.

*v. Swanson*, 943 F.2d 1070 (9th Cir. 1991); and *United States v. Cronic*, 466 U.S. 648 (1984) in support of his argument.

First, *Thomas* does not stand for the proposition that a concession to an element of an offense is the legal equivalent of entering a guilty plea on behalf of the defendant. *Thomas*, 417 F.3d at 1057-58. Second, the *Thomas* Court concluded that the appropriate legal standard to assess the prejudice when trial counsel concedes an offense is governed by the *Strickland* standard regarding prejudice (petitioner has to allege a reasonable likelihood of a different outcome), not the *Cronic* standard regarding prejudice (prejudice is presumed). *Thomas*, 417 F.3d at 1058. Third, the *Thomas* Court, after citing to S*wanson*, held that "trial counsel's concession of defendant's guilt to one of several charges in order to enhance his credibility in arguing against conviction on other charges is a reasonable trial strategy." *Thomas*, 417 F.3d at 1058.

The charge of a felon unlawfully possessing a firearm required the State to prove that, in the State of Idaho, Williams knowingly possessed a firearm, to wit: a Beretta handgun; and when doing so, Williams had previously been convicted of a qualifying felony. That the crime occurred in Idaho, the make of the firearm, and that Williams had previously been convicted of a qualifying felony were not at issue. Thus, the only element at issue was whether Williams "knowingly" possessed the firearm.

The district court found that the only evidence to contradict Williams' possession of the firearm was Williams' testimony. Because Williams did not testify, the district court determined that "absent Williams' anticipated testimony, there was no evidence enabling [trial counsel to] do anything other than make the concession. Importantly, in making the concession, [trial counsel] also pointed out that there was no evidence that the gun Williams possessed was the same gun used in the July 22 robbery." In order to understand the district court's reasoning, additional context is necessary.

In the underlying criminal case, Williams was charged with unlawful possession of a firearm by a felon and two robberies, one with a weapon enhancement. The prior felony convictions giving rise to the unlawful possession of a firearm charge were for murder and domestic battery. Williams was concerned about the jury hearing evidence regarding his prior convictions as part of the robbery trial so the parties agreed to bifurcate the trial. The first phase of the trial would consist of the robbery charges, and the second phase would consist of the felon in unlawful possession of a firearm charge and the persistent violator enhancement. At the second

23

phase, the defense, with Williams' knowledge and consent, intended to stipulate that Williams had a qualifying felony that prohibited him from possessing a firearm; thus, the jury would never hear the exact nature of Williams' prior felony convictions.

During the first phase of the trial on the robbery charges, the State produced the testimony of multiple witnesses that a gun was found in the backpack in Williams' motel room; an officer testified that Williams' identification was also in the backpack with the gun. Trial counsel's original defense strategy was that Williams would testify and disclaim ownership of the gun. Williams' defense strategy was to allege the gun was planted by law enforcement. However, as noted above, Williams declined to testify. In order to address the overwhelming evidence linking the gun to Williams, trial counsel attempted to ameliorate the significance of the evidence. He did so by arguing that although Williams possessed the handgun, the evidence did not establish Williams' guilt because there was no evidence linking the gun to the robberies. Despite that argument, Williams was convicted of the robberies.

In the second phase of the trial on the unlawful possession of a firearm charge, based on the parties' previous stipulation, the trial court informed the jury that Williams had previously been convicted of a "qualifying felony." The district court found that the stipulation regarding Williams' prior qualifying felony was strategic because if Williams was acquitted during the first phase of the trial, only the unlawful possession of a firearm charge would be left and the stipulation would prevent the jury from hearing the nature of the prior felonies. If the jury did not acquit Williams of the charges during the first phase of the trial, the State would still have to establish the two prior felonies for the persistent violator charge. The district court found that although the strategy was ultimately unsuccessful, Williams failed to show the strategy resulted from inadequate preparation, ignorance of the relevant law, or other shortcomings capable of objective review. As a result, the strategic decision was given the appropriate deference in post-conviction.

On appeal, Williams' argument fails to address how conceding that possessing the gun was the equivalent of knowingly possessing the gun. In fact, Williams' preferred defense--that the officers planted the gun--relied on acknowledging that he possessed the gun but that such possession was not knowing. Without providing argument and authority that "possession" is the legal equivalent of "knowing possession," Williams has failed to demonstrate error in the district court's conclusion that he did not allege a genuine issue of material fact that his trial counsel conceded the "knowingly possessed" element of the unlawful possession of a firearm charge. A

24

party waives an issue on appeal if either argument or authority is lacking. *Powell*, 130 Idaho at 128, 937 P.2d at 440.

Moreover, even if trial counsel conceded that element, Williams has not argued that conceding one element during closing argument in the first phase of the trial was the legal equivalent of entering a guilty plea on Williams' behalf in the second phase of the trial. In the second phase of the trial, the State was still required to prove all the elements of the offense beyond a reasonable doubt, including that Williams possessed the gun and that the possession was knowing.

Williams has failed to establish the district court erred in summarily dismissing this claim.

### 6. Cumulative Prejudice

Williams contends that this Court should not require him to establish deficient performance and prejudice on each claim of ineffective assistance of counsel. Instead, Williams invites this Court to look at the aggregation of alleged deficient performance and then determine whether the cumulative effect was prejudicial. In support of that proposition, Williams cites *Boman v. State*, 129 Idaho 520, 927 P.2d 910 (Ct. App. 1996) and *Reynolds v. State*, 126 Idaho 24, 878 P.2d 198 (Ct. App. 1994). In *Boman*, this Court reiterated that a necessary predicate to the application of the cumulative error doctrine is a finding of error in the first instance. *Boman*, 129 Idaho at 527, 27 P.2d at 917. In *Reynolds*, we reviewed each of the alleged errors and the record as a whole to conclude that Reynolds failed to establish prejudice, either individually or cumulatively. *Reynolds*, 126 Idaho at 32, 878 P.2d at 206. Both cases reviewed the individual claims to determine whether there was any error before cumulatively reviewing the case for error.

Pursuant to the doctrine of cumulative error, a series of errors, harmless in and of themselves, may in the aggregate show the absence of a fair trial. *State v. Adamcik*, 152 Idaho 445, 483, 272 P.3d 417, 455 (2012). However, a necessary predicate to the application of the doctrine is a finding of more than one error. *Id.* Williams has failed to demonstrate at least two errors; consequently, the doctrine of cumulative error does not apply. In sum, for all the reasons explained above, the district court did not err in summarily dismissing Williams' ineffective assistance of counsel claims.

### B. Deprivation of Fifth Amendment Right to Testify

In his post-conviction petition, in addition to raising the claim regarding his Fifth Amendment rights as a claim of ineffective assistance of counsel, Williams also raises the claim

25

as an independent constitutional violation. Every criminal defendant has a fundamental right to testify on his or her own behalf pursuant to the due process clauses of the Fifth and Fourteenth Amendments and from the compulsory process clause of the Sixth Amendment. *State v. Hoffman*, 116 Idaho 689, 690, 778 P.2d 811, 812 (Ct. App. 1989). The defendant is personally vested with the ultimate authority to decide whether or not to testify. *Id.* When the petitioner is raising a deprivation of his Fifth Amendment right as a substantive constitutional claim, then pursuant to *Chapman v. California*, 386 U.S. 18 (1967), the defendant has the burden to show he was deprived of the right to testify, and the state must then show beyond a reasonable doubt that the deprivation did not contribute to the defendant's conviction--that it was harmless error. *Rossignol v. State*, 152 Idaho 700, 704, 274 P.3d 1, 5 (Ct. App. 2012). In determining whether the petitioner was deprived of his right to testify, the first step is to determine if the defendant is apprised of his right to testify. *Cootz*, 129 Idaho at 369, 924 P.2d at 631. If so, the appellate court then must determine whether the defendant waived his right to testify and whether that waiver was knowingly, intelligently, and voluntarily made. *Rossignol*, 152 Idaho at 708, 274 P.3d at 9. To determine whether a waiver is voluntary, the court must consider the totality of the circumstances, which may include a review of "the background, experience, and conduct of the accused." *See State v. Brennan*, 123 Idaho 553, 556, 850 P.2d 202, 205 (Ct. App. 1993) (quoting *Edwards v. Arizona*, 451 U.S. 477, 482 (1981)). A trial court's determination that a defendant knowingly, intelligently, and voluntarily waived a constitutional right will not be disturbed on appeal where it is supported by substantial and competent evidence. *State v. Luke*, 134 Idaho 294, 297, 1 P.3d 795, 798 (2000); *Hoffman*, 116 Idaho at 691, 778 P.2d at 813.

Williams' decision not to testify because he disagreed with the theory of defense presented does not allege a genuine issue of material fact that he was deprived of his right to testify. As discussed above, the district court found Williams was informed of his right to testify and knowingly, intelligently, and voluntarily waived that right. Williams does not allege that the trial court failed to advise Williams of the right to testify or affirmatively deprived Williams of that right. The record demonstrates that the trial court discussed with Williams his right to testify more than once and made factual findings regarding the knowing, intelligent, and voluntary nature of Williams' waiver. As a result, Williams fails to provide factual support for his claim that the trial court deprived him of his Fifth Amendment right to testify. *See Rossignol*, 152 Idaho at 709, 274

26

P.3d at 10 (holding that where trial court told petitioner at trial that petitioner could testify if he so wanted, petitioner failed to establish a deprivation of his Fifth Amendment right to testify).

Because Williams has failed to establish a genuine issue of material fact regarding the deprivation of his right to testify, the district court did not err in summarily dismissing this claim.

## C.        Motion to Appoint Counsel and Idaho Rule of Civil Procedure 60(b) Motion

Approximately fourteen months after the final judgment was entered in his case, Williams filed a pro se I.R.C.P. 60(b)(6) motion for relief from the final judgment. Williams also filed a motion for court-appointed counsel for purposes of pursuing his I.R.C.P. 60(b)(6) motion. The district court did not rule on the motion for appointment of counsel and denied Williams' I.R.C.P. 60(b)(6) motion. Williams argues the district court erred in denying his I.R.C.P. 60(b)(6) motion without first ruling on his motion to appoint counsel. It appears Williams is arguing the standard that applies to motions for the appointment of counsel for purposes of reviewing a post-conviction petition to determine if there are any potentially viable claims similarly applies to a request for counsel after the post-conviction petition has been summarily dismissed. Williams provides no authority for that argument. Consequently, he has waived that claim on appeal. *Powell*, 130 Idaho at 128, 937 P.2d at 440.

The Idaho Supreme Court addressed the mechanism by which pro se motions filed by represented petitioners in post-conviction proceedings should be handled in *Ward v. State*, 166 Idaho 330, 458 P.3d 199 (2020). In that case, Ward filed a pro se petition for post-conviction relief and then counsel was appointed. *Id*. at 331, 458 P.3d at 200. During the pendency of the proceedings and despite having appointed counsel, Ward filed numerous pro se documents. *Id*. While the district court was considering the State's motion for summary dismissal, Ward filed a pro se motion "purporting to be a motion 'respectfully [invoking] his right to self-representation.'" *Id*. at 332, 458 P.3d at 201. The district court granted the State's motion for summary dismissal and dismissed Ward's petition for post-conviction relief with prejudice; the court simultaneously denied Ward's request to represent himself as moot. *Id*. Ward filed additional pro se motions and a notice of appeal. *Id*. Appellate counsel was appointed. *Id*.

On appeal, Ward argued the district court erred in denying his request to proceed pro se. *Id*. The Idaho Supreme Court first addressed whether Ward's pro se filing to represent himself was properly filed in the district court. *Id*. The Court concluded that Ward's filing, even when construed as a motion, was not properly filed under I.R.C.P. 7(b)(3)(E) and, thus, was subject to

27

dismissal without further notice. *Ward*, 166 Idaho at 332, 458 P.3d at 201. The motion was not properly filed because it did not request oral argument or include a supporting memorandum or brief. *Id*. As a result, the Supreme Court held that pursuant to I.R.C.P. 7, the district court "had no duty to entertain any motion until it was properly supported or set for a hearing." *Ward*, 166 Idaho at 332, 458 P.3d at 201.

The Court then addressed whether Ward properly followed the method for proceeding without his attorney. *Id.* The Court reiterated that post-conviction proceedings are civil in nature, and as such, do not trigger any Sixth Amendment right to self-representation. *Id*. at 333, 458 P.3d at 202. Instead, the Court noted that "a party to a civil action who wishes to proceed without an attorney must comply with the Idaho Rules of Civil Procedure." *Id*. Consequently, the Court turned to I.R.C.P. 11.3, which provides the procedure for substitution or withdrawal of an attorney in civil proceedings. *Ward*, 166 Idaho at 333, 458 P.3d at 202.

Pursuant to I.R.C.P. 11.3, there are two ways in which a represented party may proceed without an attorney. First, the party desiring to proceed without counsel may file a substitution of counsel indicating he will be representing himself but the attorney being replaced must sign the notice. I.R.C.P. 11.3(a)(1). Second, an attorney may withdraw pursuant to I.R.C.P. 11.3(b) by filing a motion to withdraw, setting the motion for a hearing, and providing notice to all parties. I.R.C.P. 11(3)(b)(1). If the attorney is granted leave to withdraw pursuant to I.R.C.P. 11.3(b), the party may proceed without counsel.

The Court concluded that Ward's motion failed to meet the requirements of I.R.C.P. 11.3(a)(1) because it did not purport to be a notice of substitution of counsel and was not signed by Ward's assigned counsel. *Ward*, 166 Idaho at 333, 458 P.3d at 202. Ward's filing similarly failed as a motion for request to withdraw pursuant to I.R.C.P. 11.3(b)(1) because Ward's appointed counsel did not file the motion, nor was the motion set for a hearing. *Ward*, 166 Idaho at 333, 458 P.3d at 202. The Court ultimately concluded that "Ward's filing was not a valid motion, properly brought before the district court," and the filing "was improper in both form and substance." *Id*.

To the extent *Ward* applies to a motion to appoint counsel as opposed to a motion to proceed pro se, like in *Ward*, Williams' document purporting to be a motion to appoint counsel was not properly filed and, thus, was not properly before the court. Williams' motion for counsel neither requested oral argument nor included a supporting memorandum or brief and, thus, did not

28

comport with the requirements of I.R.C.P. 7. Moreover, the district court made it clear during an earlier hearing in the post-conviction proceedings what Williams needed to do to properly file a motion in a civil case:

> And so the Court is going to follow the dictates of *Ward vs. Idaho*. I'll enter an order that explains what that case means as it relates to this case. I'll have the clerk serve that on Mr. Williams immediately.
>
> The requirement is that if--that the daily, weekly, whatever, letters I get from Mr. Williams are not going to be reviewed by the Court. They are not filings with the Court. They are not pleadings with the Court. Mr. Williams is represented by an attorney. And through that attorney is how business is done, through pleadings recognized by the Rules of Civil Procedure.
>
> And if Mr. Williams decides he wants to fire [post-conviction counsel] and represent himself, then I would expect to see [post-conviction counsel] file a substitution of counsel, substituting Mr. Williams pro se for himself, signed off by Mr. Williams, as well.

While Williams was not present at the hearing, the district court served a copy of the order on Williams, and in that order, the court cited I.R.C.P. 7 for the proper method to file a motion. Thus, at the time Williams filed his request for counsel, the district court had already notified Williams what he needed to do, but Williams failed to comply with the relevant rules of civil procedure.

The deficiencies in Williams' request for counsel rendered it subject to dismissal without further notice pursuant to I.R.C.P. 7(b)(3)(E), which is what occurred. As set forth in *Ward*, the district court in this case was under no duty to entertain Williams' request for counsel until the document was properly filed to include a request for oral argument and a supporting memorandum or brief. *Ward*, 166 Idaho at 332, 458 P.3d at 201. As in *Ward*, the district court declined to entertain the motion on the merits because it was improperly filed. Even if the request for counsel was properly filed, there was no reason for the district court to rule on the motion before addressing the I.R.C.P. 60(b) motion because Williams was still represented by the previously appointed post-conviction counsel.

Williams argues on appeal that the district court's finding that Williams was represented by appointed counsel at the time he filed the request for appointment of counsel is erroneous because, although Williams had been appointed appellate counsel, appellate counsel could not represent Williams in the district court proceedings. While that statement is true in that Williams was appointed appellate counsel, it does not address the fact that post-conviction counsel had previously been appointed, had represented Williams during the post-conviction proceeding, and

had not filed a motion to withdraw or been granted leave to withdraw from Williams' post-conviction case. Thus, contrary to his assertion, Williams was still represented by the previously appointed post-conviction counsel in the district court for any residual post-conviction proceedings. Indeed, Williams appears to acknowledge that post-conviction counsel still represented him by alleging that post-conviction counsel should have filed a motion to withdraw when he was served a copy of Williams' I.R.C.P. 60(b) motion. Williams was already represented by counsel at the time he filed his request to appoint counsel; as a result, the district court did not err in declining to rule on Williams' motion to appoint counsel before denying Williams' I.R.C.P. 60(b)(6) motion.

We now turn to Williams' I.R.C.P. 60(b)(6) motion. Williams makes three arguments on appeal. First, Williams argues that if he was represented by counsel, the district court erred in denying the I.R.C.P. 60(b)(6) motion because the motion should have been forwarded to counsel without the district court taking any action on the motion. Second, Williams argues that if he was not represented, the district court erred by dismissing the motion on the grounds that the district court would not accept a pro se motion when Williams had appointed counsel. Third, Williams argues the I.R.C.P. 60(b)(6) motion raises a colorable claim of unique and compelling circumstances that justify granting relief. The State argues the district court did not err in denying the motion. The district court denied the motion in a written order on the grounds that because Williams was represented by counsel, the district court would not consider the I.R.C.P. 60(b)(6) motion unless filed through counsel.

First, we can dispose of Williams' argument that if he was not represented by counsel, the district court erred in dismissing the motion. As held above, Williams was represented by counsel so the factual predicate for his claim fails.

Williams next argues that if he was represented by counsel, then the district court erred by ruling on his I.R.C.P. 60(b)(6) motion pursuant to *Ward*. It is true that, in *Ward*, the Supreme Court held that if a party is represented by counsel and files a pro se filing, a court should refuse to entertain the independent filings and to do so is error. *Ward*, 166 at 334, 458 P.3d at 203. However, the Court then stated:

> However, having come to the conclusion that the district court erred, not by ruling incorrectly on Ward's purported motion, but by ruling on it at all, we need not reverse the district court's separate order and final judgment granting summary dismissal. Because we hold that there was no motion properly before the district

30

court to be ruled upon in the first place, the district court's denial of the purported motion has no impact on the propriety of its final decision and judgment dismissing Ward's post-conviction petition on the merits.

*Id*.

In this case, the district court did not "entertain" Williams' filing on the merits, the court simply denied the motion based on the rationale of *Ward*, i.e., because Williams was represented by counsel, the court would not consider the pro se motion. We do not read *Ward* as a limit on a district court's authority to deny an improperly filed motion. We similarly do not read *Ward* as requiring a district court to leave pending an improperly filed motion. District court judges carry caseloads which are subject to time standards; to find error when a district court dismisses or denies an improperly filed document means the court must not rule on the motion and the case would remain open to languish on the court's docket and perhaps prevent the court from meeting the time standards or signing his salary affidavit. The parties carry the responsibility of properly filing and pursuing motions in the district court. In a case like this where a particularly litigious party was advised how to properly file a pro se motion, but nonetheless filed an ongoing stream of pro se documents that did not comply with the civil rules, the district court judge should not carry the responsibility of forwarding every filing to that party's attorney. The burden of properly filing motions, and the consequences of failing to do so, should rest with the parties, not the court.

Moreover, as Williams' I.R.C.P. 60(b)(6) motion was not properly filed pursuant to I.R.C.P. 7(e)(3), the motion was subject to dismissal without any further proceedings, and Williams suffered no prejudice when the motion was denied for that reason. First, Williams explicitly declined to include a declaration, stating, "Petitioner foregoes a supporting declaration, none of this would be material in a decision to accept as timely the accompanying appeal docket and motion to augment speacks [sic] for themselves." Additionally, no notice of hearing was attached to the motion. As a result, the motion was subject to dismissal without further notice under I.R.C.P. 7(b)(3)(E), and the district court did not err in denying the motion on procedural grounds. *See Ward*, 166 Idaho at 332, 458 P.3d at 201. Even if the district court erred in denying the motion on procedural grounds, the motion was subject to dismissal on substantive grounds, which leads to William's third argument on appeal.

Williams argues that post-conviction counsel should have filed a motion to withdraw so that Williams could proceed pro se in the post-conviction proceeding. As a result, Williams argues, he "was totally deprived of his right to represent himself" which constitutes the type of "unique

31

and compelling circumstances" which justify relief pursuant to I.R.C.P. 60(b)(6) and *Eby v. State*, 148 Idaho 731, 228 P.3d 998 (2010). We disagree.

Williams' underlying legal predicate--that he had a right to self-representation in a post-conviction case--is false. *See Ward*, 166 Idaho at 333, 458 P.3d at 202. We also note that Williams' factual claim--that he repeatedly indicated he wished to represent himself--is not supported by the record. During a hearing on May 22, 2019, the district court specifically asked Williams if he wished to represent himself or whether he wished to have counsel continue his representation. Williams responded, "So, yes, I would really like an attorney, but, again, this is a rather difficult situation when you have an attorney that doesn't communicate with you and just seems can't pull the trigger on anything." The district court noted that in the absence of any request to represent himself, Williams would continue with appointed counsel in the post-conviction case.

Williams claims on appeal that on September 9, 2019, September 16, 2019, and November 6, 2019, he unequivocally requested the district court to dismiss appointed counsel so he could proceed pro se. That is not consistent with the record. For example, on September 11, Williams filed a document that did not request that he be permitted to proceed pro se; rather, Williams asked the district court to "fire [post-conviction counsel] and appoint competent, functioning counsel." Next, in his September 16 filing, Williams asked that the post-conviction proceedings be stopped, reset, and "properly conducted," "[e]ither by acceptable counsel or by me." Finally, Williams filed a document on November 6, entitled "Unequivocal demand to represent self, and request to amend petition; and other objections." In that filing, Williams requested that he be permitted to proceed pro se *but* conditioned that request on the ability to amend his petition ("If Williams cannot amend his petition he does not request to represent himself. No point."). Also in that motion, he asserted that he has a right to "speak for himself," but still be represented by counsel. Thus, we disagree that Williams unequivocally requested permission to proceed pro se. Williams filed another motion on November 18, 2019, wherein he requested that he be permitted to act as co-counsel and asserted he has a constitutional and statutory right to do so.

At a hearing on January 24, 2020, which Williams refused to be transported to, the district court reiterated that it would not allow Williams to act as co-counsel, and that it had previously given Williams the opportunity to proceed pro se but Williams requested counsel. The district

court issued an order indicating that Williams could: (1) hire new counsel at his own expense; (2) represent himself pro se; or (3) continue with appointed counsel.

Williams acknowledged that he received the order but disputed that he refused to be transported. As a result, the district court rescheduled the hearing for February 28, 2020. However, on February 20, 2020, Williams again filed a motion requesting that he be permitted to "appear and defend in person and with counsel."

Williams was not transported for the February 28, 2020, hearing because jail staff reported his mental health status was not appropriate for transport. The district court proceeded with the hearing and declined Williams' request that he be co-counsel. Thus, the record does not show, as Williams argues, that he repeatedly and unequivocally requested that he be permitted to represent himself. Instead, the record shows that Williams repeatedly asked to be permitted to act as co-counsel, which the district court denied. Thus, Williams' claim that the district court deprived him of his opportunity to proceed pro se is belied by the record.

On appeal, Williams argues that once he told counsel to withdraw, counsel was required to file a motion to do so pursuant to *Ward*, and the failure of counsel to do so should act as an exception to the holding of *Ward*. We disagree. Even if counsel did not file a motion to withdraw, that was not the only way Williams could proceed pro se. Williams could have filed a substitution of counsel pursuant to I.R.C.P. 11.3(a)(1) but did not do so. *Ward*, 166 Idaho at 333, 458 P.3d at 202. That Williams failed to avail himself of the opportunity does not mean the opportunity did not exist, nor does it mean we should find an exception to the holding in *Ward*.

Finally, Williams argues that this case constitutes "unique and compelling circumstances" justifying relief pursuant to I.R.C.P. 60(b)(6) because Williams "was totally deprived of the opportunity to represent himself by post-conviction counsel's failure to move to withdraw after being fired by" Williams. We disagree. The Idaho Supreme Court addressed what constitutes "unique and compelling circumstances" in the post-conviction context in *Eby*. Eby filed a pro se petition for post-conviction relief following his conviction for first-degree murder, conspiracy to commit robbery, and attempted robbery. *Id*. at 732-33, 228 P.3d at 999-1000. Over the next five years, and throughout the representation of four different attorneys, Eby's petition languished, despite the district court issuing multiple notices of intent to dismiss; ultimately, the petition was dismissed for inactivity. *Id*. at 733-34, 228 P.3d at 1000-01. The Court characterized the time prior to the dismissal of the petition as "years of shocking and disgraceful neglect." *Id*. After the

33

petition was dismissed, Eby's attorney filed an I.R.C.P. 60(b) motion which the district court dismissed. *Id*. at 734, 228 P.3d at 1001. As such, Eby never had the opportunity to advance constitutional challenges to his conviction and sentence for first-degree murder in his post-conviction proceeding. *Id*. at 737, 228 P.3d at 1004. In granting Eby's I.R.C.P. 60(b)(6) motion, the Supreme Court noted the very narrow scope of the case and reiterated "this Court has infrequently found reason to grant relief under I.R.C.P. 60(b)(6)." *Eby*, 148 Idaho at 737, 228 P.3d at 1004.

This Court's holding in *Bias v. State*, 159 Idaho 696, 707, 365 P.3d 1050, 1061 (Ct. App. 2015) applied *Eby*. There, Bias argued the holding in *Eby* established that ineffective assistance of post-conviction counsel constituted a basis for relief in an I.R.C.P. 60(b)(6) motion. *Bias*, 159 Idaho at 706, 365 P.3d at 1060. We specifically rejected that argument and noted that *Eby* only stands for the proposition that in the "*complete absence* of meaningful representation," an I.R.C.P. 60(b) motion *may* provide a mechanism for relief. *Bias*, 159 Idaho at 707, 365 P.3d at 1061 (emphasis added). We specifically noted that "Bias's dissatisfaction with his post-conviction counsel's performance does not constitute the 'unique and compelling circumstances' required before a court may grant relief under Rule 60(b)." *Bias*, 159 Idaho at 707, 365 P.3d at 1061.

On appeal, Eby was able to show injury--his inability to participate in the only available proceeding in which he could advance constitutional challenges to his conviction and sentence. *Eby*, 148 Idaho at 737, 228 P.3d at 1004. Eby could also show that it was circumstances beyond his control that prevented timely action--his attorneys did nothing for more than five years and his petition for post-conviction relief was dismissed for inactivity rather than after any kind of review in the district court. *Id*. Even under the circumstances giving rise to Eby's claim, the Supreme Court did not hold that Eby *was* entitled to I.R.C.P. 60(b)(6) relief, but only that he *may* be entitled to such relief. *Eby*, 148 Idaho at 737, 228 P.3d at 1004.

Unlike the "years of shocking and disgraceful neglect" in Eby's case, Williams cannot show any injury as he had no constitutional right to proceed pro se in a civil matter, was given the opportunity to proceed pro se but declined that opportunity, and was subsequently given an order explaining the method by which he could file a motion to either have his attorney withdraw or request substitution of himself as counsel. Williams' failure to do so does not mean he was deprived of the opportunity.

34

Finally, unlike the attorneys in *Eby*, post-conviction counsel in this case actively participated in the post-conviction proceedings: counsel engaged in motion practice; attempted to communicate with Williams despite Williams' refusal to meet with counsel; responded to the district court's filings and notices; and sent at least one, seven-page letter responding to Williams' questions, discussing potential post-conviction claims and the viability of those claims, and explaining relevant case law. Indeed, post-conviction counsel's response to the notice of intent to dismiss correctly identified some issues for which the district court had not provided notice of intent to dismiss, resulting in an additional notice being issued. All of post-conviction counsel's actions in this case demonstrate why this case is distinguishable from the complete absence of meaningful representation present in *Eby*. Williams has failed to establish a complete lack of meaningful representation in any of the post-conviction proceedings, before or after the summary dismissal of his petition. For all of the above reasons, the district court did not err in denying Williams' I.R.C.P. 60(b)(6) motion.

## IV.

## CONCLUSION

The district court's final judgment and the order summarily dismissing Williams' petition for post-conviction and the order denying I.R.C.P. 60(b) motion are affirmed.

Chief Judge GRATTON and Judge LORELLO **CONCUR**.

35